Exhibit 2

UNITED STATES DISTRICT COURT FOR DOCKETING
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION FEB -3  PM 5:

UNITED STATES OF AMERICA )

v. )

ENAAM M. ARNAOUT )

U.S. DISTRICT COURT

No. 02 CR 892
Hon. Suzanne B. Conlon

**FILED**
FEB 0 3 2003
United States District Court
Judge Suzanne B. Conlon

**DOCKETED**
FEB   5 2003

## BILL OF PARTICULARS

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully submits the following Bill of Particulars addressing the provision of material support by defendant and his co-conspirators to individuals associated with *al Qaeda*.

### I.    Material Support related to *al Qaeda*

The government will prove at trial that material support was provided to *al Qaeda* by defendant and his co-conspirators during the time frame charged in the Indictment in the following ways:

(i) the defendant worked with the BIF Enterprise (hereafter "BIF") in the Sudan to provide financial support to training camps and fighters for the Popular Defense Force ("PDF") militia who were working under the direction of *al Qaeda*;

(ii) the defendant worked with BIF in Bosnia to provide financial assistance to fighters in Bosnia aligned with *al Qaeda*;

(iii) the defendant worked with BIF to provide the cover of legitimate employment for members of the *al Qaeda* network: naming Mohamed Bayazid President of BIF for at least some part of the fall of 1994; describing Mamdouh Salim as a director of BIF and paying for his lodging in May 1998; and employing Saif ul Islam as the BIF officer in Chechnya in approximately 1998 and

171

1999; and

(iv) the defendant concealed the relationship between BIF and *al Qaeda*.[1]

## II.    Proof of The Above Particulars

The proof the government will elicit to establish the above particulars includes both general proof of the conspiratorial agreement charged and proof of particular instances when *al Qaeda* was provided material support or when the use of such resources was concealed.

### General Agreement Between BIF and *al Qaeda*

As to the general agreement, the government will offer the testimony of Jamal Ahmed al Fadl, an *al Qaeda* member, that Usama Bin Laden specifically advised him in late 1993 or early 1994 that *al Qaeda* was using BIF (referred to as "*al Birr*", the Arabic word for "Benevolence") to move funds to areas where *al Qaeda* was carrying out operations. Al Fadl will also testify that on another occasion the then chief financial officer of *al Qaeda* advised him that an employee of BIF had been detained in Saudi Arabia in 1993, apparently because a link had been found between BIF and Usama Bin Laden but the problem had been handled.[2] (The reports concerning al Fadl's statements to agents investigating this case are appended as Exhibit A. The voluminous other reports and his prior testimony have also been provided to the defense.)

The general proof of BIF's assistance also includes an internal BIF document that its purpose "from the first day" was to provide support to *jihad* and *mujahideen* and which indicated that BIF

---

[1]    Concealment itself is an act in violation of the material support statute. Title 18, United States Code, Section 2339A.

[2]    On another occasion in 1995, Bin Laden complained that a different charity had been used to fund an operation unrelated to BIF but Bin Laden was concerned that this might end his ability to use charities for funding. Al Fadl specifically recalled Bin Laden mentioning BIF ("*Birr*") as one of the charities that *al Qaeda* was then using during this 1995 conversation.

.2

moved to the Sudan because of its relationship with "the base," the English translation for *al Qaeda*.

In short, the general nature of the conspiratorial agreement by which BIF was supporting *al Qaeda* is demonstrated by the statements by both Usama Bin Laden and *al Qaeda's* former chief financial officer as well as statements contained in BIF's internal documents.

The more specific proof focuses in particular on defendant's involvement in, and concealment of, BIF efforts principally in the Sudan and Bosnia, as demonstrated primarily by BIF internal documents and the testimony of al Fadl.

### Material Support to *al Qaeda* Efforts in the Sudan

BIF's own documents reflect that one of the reasons BIF was in the Sudan was to work with *al Qaeda*. During the search of BIF's offices here in Illinois, a file marked "Sudan" was recovered. Inside was information about the BIF offices in Sudan. *See* Sudan File, attached in separate, under seal appendix, as Exhibit B. In the Appendices, BIF had a document which stated,

> From its first day, the BIF aimed to support Jihad and Mujahideen, by
> • Assisting in military and logistical support.
> • Assisting in providing medical care for the Mujahideen in the field.
>
> \* \* \* \* \*
>
> By the grace of Allah, the services of the BIF in the Sudan started in May 1991, after the agreement of *the base* in Sudan with the Sudanese Government.

*Id.* (emphasis added). These documents reflect not only that BIF and the defendant were involved in support of the *mujahideen* in the region, but that BIF was aligned with "the base," the English translation for *al Qaeda*, after an agreement between *al Qaeda* and the Sudanese government.

Al Fadl will describe that agreement: an accord between the National Islamic Front ("NIF")(the party with *de facto* control over the Sudan) and *al Qaeda* by which *al Qaeda* would

3

provide, among other things, training and support to the Popular Defense Force ("PDF")[3] in guerilla warfare and other tactics for use in the war against the people of Southern Sudan. Al Fadl will testify that after a meeting attended by Bin Laden and many others (including Bayazid), it was agreed that a camp for training the PDF would be opened by *al Qaeda*.[4]

Al Fadl will identify a photograph recovered from BIF's Illinois office of that camp in the Sudan. *See* Photograph, attached in separate, under seal appendix, as Exhibit B. That photograph shows a sign in the background of the camp bearing the logo of BIF stating it was "feeding a *Mujahid* with the *Mujahideen.*" Among others, Saif ul Islam (an Egyptian who was a member of *al Qaeda's* military committee and later a BIF officer) trained others at that camp to train the PDF, according to al Fadl. Al Fadl will testify that BIF located its office in Khartoum near the office of the PDF and persons managing the PDF frequently visited BIF. The foregoing corroborates Bin Laden's statement that BIF was being used to support *al Qaeda* in countries where it had operations.[5]

**Material Support to *al Qaeda* Efforts in Bosnia**

Proof of the support the BIF enterprise provided to *al Qaeda* in Bosnia is demonstrated by a combination of the "Bosnian video" and the testimony of al Fadl.

---

[3]     The PDF was referred to in Arabic as the *Difaar al Shabi*.

[4]     The meeting was also attended by an influential member of the NIF named Dr. Abdel Salaam Saad Suliman who exerted considerable inference in the NIF and over the Sudanese intelligence service and PDF. Al Fadl will identify a photograph of defendant meeting with Dr. Abdel Salaam Saad Suliman in Khartoum, Sudan, in Suliman's office, which al Fadl recognizes from the furniture. *See* Photograph, attached in separate, under seal appendix, as Exhibit C. Al Fadl will further testify that he recognizes from the same series of photographs: a photograph of Bayazid (Abu Rida) and a photograph of the defendant next to Bayazid (Abu Rida). *See* Photographs, attached in separate, under seal appendix, as Exhibit D.

[5]     In return for the assistance provided to the PDF, al Fadhl explains, the Sudanese intelligence service facilitated the free movement of *al Qaeda* members and weapons in the Sudan.

4

As described elsewhere, the government will be offering in evidence a videotape obtained in Illinois bearing the *Lajnatt Al-Birr Al-Islamiah* ("LBI") name and logo, depicting combat footage in Bosnia-Herzegovina, eulogizing two *al Qaeda* members killed in combat, showing scenes of relief work in Afghanistan, and soliciting donations to *mujahideen*. *See* Transcript of Video, attached in separate, under seal appendix, as Exhibit F.

Al Fadl will testify that while working for *al Qaeda* in the Sudan (and being supervised by Bayazid) he was dispatched to Zagreb, Croatia, by Usama Bin Laden and Salim, among others, for the purpose of assessing the situation in Bosnia and, in particular, assessing what businesses *al Qaeda* could purchase to support its operations and what banking services could be used by *al Qaeda*. In connection with that trip, Salim advised al Fadl that Bosnia was to be a base for *al Qaeda* operations in Europe.

Al Fadl attended meetings in Zagreb, Croatia, involving several relief agencies, including the BIF office. Al Fadl will testify that he recalls meeting with *al Qaeda* member Abdel Rahman al Dosari in the office of *"al Birr"* (BIF) in Zagreb and that the defendant, among others, was present. Al Fadl was told by Abdel Rahman al Dosari (a military expert) that weapons were purchased in Germany for the fighters in Bosnia. Abdel Rahman al Dosari also advised that the Islamic scholars needed to issue a ruling (*fatwah*) that would allow *al Qaeda* members to shave their beards and wear Western clothing as necessary to blend in while in Bosnia and Croatia.

Abdel Rahman al Dosari worked with Abu Zubair al Madani, another *al Qaeda* member who appeared on the Bosnian video (bearing the LBI logo), training fighters in Bosnia.[6] At its essence,

---

[6]    Al Fadl identifies one of the individuals eulogized in the Bosnian War Video as Abu Zubair al Madani, a well-known member of *al Qaeda* and cousin of Bin Laden.

5

then, the Bosnian video is a memorial to an *al Qaeda* member and a solicitation for the continued

support of the mujahideen that *al Qaeda* was supporting in its effort to establish a European base for

*al Qaeda.*

**Bayazid's Position with BIF in Fall 1994**

As of the fall of 1994, Loay Bayazid officiated over at least one BIF meeting as the President

of BIF in Illinois, working with defendant Arnaout and receiving a check in the amount of over

$4000.[7] *See* BIF documents, attached in separate, under seal appendix, as group Exhibit H.[8] Al Fadl

will testify that Bayazid (Abu Rida) was a key member of the *al Qaeda* network and particularly

involved in efforts to obtain weapons for the PDF in the Sudan.[9]

**Travel of Mamdouh Mahmud Salim, a.k.a. Abu Hajer**

In May 1998, Salim traveled to Bosnia using a document bearing defendant Arnaout's

signature indicating that Salim was a director of BIF. Specifically, on April 30, 1998, the Ljiljan

Commerce Group, a Bosnian corporation directed solely by defendant Arnaout and part of the BIF

---

[7]    While the defense has contended elsewhere that a sealed exhibit indicates that "Bayazid affirmed that he had never been president of BIF-USA," that is not correct. The relevant document states that "Arnaout invited him to help run the organization. Rida traveled to Chicago to work with the foundation but subsequently realized that Arnaout was only using him and was ... continuing to manage the organization from behind the scenes. Rida departed Chicago but had already obtained a driver's license ..." Bayazid does not deny that he ever worked for BIF or had been president – he only indicated that his service to BIF was brief. *See* Reports of Interviews, attached in separate, under seal appendix, as Exhibit G.

[8]    The material support statute prohibits the provision of "currency," as well as "lodging" "facilities" "false documentation or identification" and "transportation." 18 U.S.C. 2339A.

[9]    Al Fadl can testify that Bayazid (as well as Salim and Saif ul Islam) were ranking members of the *al Qaeda* network, with or without specifying the particular transactions he was aware of (or participated in) which demonstrated their trust. That conduct is discussed in other filings and not repeated herein.

6

Enterprise, wrote to the Bosnian Consulate in Turkey requesting a visa for the entry of Abu Hajer (Mamdouh Salim) into Bosnia, purportedly for a business meeting. *See* Documents supporting Salim trip, attached in separate, under seal appendix, as group Exhibit I. On May 5, 1998, Abu Hajer completed a visa application, listing his occupation as "Businessman." That same day, a letter on Ljiljan Commerce Group letterhead was sent to the Metalurg Hotel over defendant Arnaout's signature requesting an apartment for "one of the directors of the organization BIF in Bosnia [.]" A receipt from the Metalurg Hotel shows that Salim stayed there from May 7 to May 10, 1998. The receipt also shows that the Ljiljan Commerce Group paid his bill.[10]

Documents and al Fadl will establish that Salim was a key member of the *al Qaeda* network. The minutes of the founding of *al Qaeda*, found in the possession of the defendant (and annexed as Exhibit J)[11], reflect that Salim was present for the founding. The minutes explain that the meeting was held over three days, and it names the persons on the Advisory Council, beginning with "Sheikh Usama" and including "Abu Hajer" (Mamdouh Salim). Moreover, al Fadl will testify that Salim was a member of *al Qaeda*'s *shura* (consultation) council and *fatwah* committee and was responsible, among other things, for obtaining communication equipment for *al Qaeda*. Moreover, he will testify that in connection with his 1992 trip, Salim advised al Fadl that *al Qaeda*'s goal was to make Bosnia a base for European operations.

---

[10]   Whether Salim was actually a director of BIF is irrelevant to the support that the defendant provided him in 1998. Salim, needed to travel safely through Bosnia – the place he described as *al Qaeda*'s base in Europe. In order to facilitate Salim's travel, defendant Arnaout represented that Salim was a director of BIF and BIF paid the expenses of Salim.

[11]   We have endeavored to annex a set of the most relevant documents showing Arnaout's knowledge of *al Qaeda* and the key members of its network. *See* Letters and Memorandum, attached in separate, under seal appendix, as Group Exhibit K.

7

### Employment of Saif ul Islam

BIF's internal documents establish that defendant reported that Saif ul Islam, an Egyptian, served as the BIF officer in Grozny, Chechnya. Prior to October 1999, defendant Arnaout toured Chechnya and Dagestan and reported back to a BIF fundraiser as to the role that Saif ul Islam and others played in Chechnya. In particular, on October 18, 1999, defendant Arnaout recounted the history of Chechnya to a BIF fundraiser, Uwaymir Anjum. Anjum memorialized defendant Arnaout's statements in a document titled "Daghestan and Chechnya: A Brief Recap of the Islamic Movement." *See* Report, attached in separate, under seal appendix, as Exhibit L. At the outset of his notes, Anjum (on behalf of defendant Arnaout) wrote:

> Enaam Arnaout, the CEO of the Benevolence International Foundation, a US-based humanitarian relief organization operating in the Caucus, Central Asia and Balkans, has made six trips to Daghestan/Chechnya area and has collected invaluable information on the history and details of the Islamic movement. Most of this information is collected through personal contacts and log (sic) term relationship (sic) with many key people in the movement.

> \*      \*      \*      \*      \*

> *Saif-ul-Islam*, the BIF officer in Chechnya, is an Egyptian lawyer who is very knowledgeable. He also came there through Sh. Fathi.

*Id.* at 1.

Al Fadl will describe Saif ul Islam as an Egyptian university graduate who became an *al Qaeda* member and a top military instructor as well as a member of *al Qaeda*'s military committee who was involved in military matters in Afghanistan, the Sudan (training at the camp whose picture was recovered from the Illinois office of BIF), and elsewhere. It is a reasonable inference that defendant, who worked with Bin Laden, possessed an archive of historical *al Qaeda* records, and maintained contact with Salim and Bayazid, knew Saif ul Islam's important role in *al Qaeda*.

8

## Concealment

In addition to the above specific instances of material support to *al Qaeda*, the government will also show generally that BIF concealed its true purpose and activities, most clearly in the two sworn filings submitted by defendant Arnaout denying any links to groups engaged in violence. *See* Declaration, attached in separate, under seal appendix, as Exhibit M. While this proof will be offered generally as concealment, it serves to conceal the assistance provided to *al Qaeda* discussed above and thus constitutes conduct in violation of the material support statute.

WHEREFORE, the government respectfully submits this Bill of Particulars.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

DEBORAH L. STEINER
JOHN C. KOCORAS
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300

9

## CERTIFICATE OF SERVICE

The undersigned attorney, Deborah L. Steiner, certifies that she is employed in the Office of

the United States Attorney for the Northern District of Illinois; that on the 3rd day of February 2003,

she served a copy of the foregoing BILL OF PARTICULARS via messenger to:

> Mr. Joseph Duffy, Esq.
> Stetler & Duffy Ltd.
> 140 South Dearborn Street
> Suite 400
> Chicago, Illinois 60603

DEBORAH L. STEINER
Assistant U.S. Attorney