

**MotleyRice** LLC
ATTORNEYS AT LAW

www.motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
**o.** 843.216.9000  **f.** 843.216.9450

**John M. Eubanks**
*Licensed in Maryland and South Carolina*
direct: 843.216.9218
JEubanks@motleyrice.com

**VIA CM/ECF**

September 1, 2023

The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

      Re:   *In Re: Terrorist Attacks on Sept. 11, 2001*, 03 MDL 1570 (GBD)(SN)
            *Burnett, et al. v. Al Baraka Inv. & Dev. Corp., et al.*, 03 cv 9849 (GBD)(SN)

Dear Judge Netburn:

      We write to provide clarification for issues addressed in the Court's August 11, 2023 Order, which, in part, denied the *Burnett* plaintiffs' motion for default judgment against the Taliban with leave to refile. *See* ECF No. 9280 at 2. *Burnett* counsel has consulted with Megan Benett (on behalf of the *Ashton* plaintiffs), Jeanne O'Grady (on behalf of the *Burlingame* plaintiffs), Thea Capone (on behalf of the *Bauer* plaintiffs), and Jerry Goldman (on behalf of the *O'Neill* and other plaintiffs) regarding this submission, and they are collectively in agreement with the proposals contained herein.

      The Order noted the Court's belief that safeguards implemented at ECF No. 3435 (citing ECF No. 3433) to avoid duplicative judgments had failed; however, we believe the safeguards against duplication were effective, but human error was the culprit.[1] On behalf of the *Burnett* plaintiffs, we have reviewed our previously filed motion in consultation with attorneys at Kreindler & Kreindler LLP, Speiser Krause, PC, and Baumeister & Samuels, P.C., and we have identified a small handful (less than five total that we have found) of plaintiffs who appeared on motions for default judgment against the Taliban that were filed in advance of our September 26, 2022 motion. While we sought to be proactive and fastidious to avoid this duplication, we regret it nevertheless occurred.[2] On behalf of the *Burnett* plaintiffs, counsel thanks the Court for the extraordinary work

---

[1] The Order further permitted the *Burnett* plaintiffs to re-file their motion for judgment against the Taliban once duplication issues were resolved.

[2] Most of the judgments that were entered for Speiser Krause clients that were duplicative of the *Burnett* motion were filed with the Court in November 2022—i.e., after the *Burnett* motion was filed. But in conjunction with the contents of this letter, the various law firms involved are trying to work much closer together to avoid this type of duplication from taking place.



September 1, 2023
Page 2

performed on the default motions to date, recognizing the sheer scope of the Court's enormous undertaking. Given the volume of default motions this Court has skillfully managed, the Court's work has been invaluable in permitting a significant number of the plaintiffs within this MDL to have their damages claims adjudicated against both Iran and the Taliban.

As the Court may recall, at the time that many of these cases were initially filed either in the U.S. District Court for the District of Columbia (where the *Burnett* case was filed on August 15, 2002) or in this Court, "some plaintiffs…retained more than one law firm to represent their interests" and as to those plaintiffs with dual representation, "plaintiffs' counsel have worked together to identify those plaintiffs, have accounted for those plaintiffs in dealings with the court, and taken steps to ensure that the overlapping representations have *not* resulted (or will result in) duplicate judgments in favor of such plaintiffs." *See* ECF No. 3433 (Plaintiffs' Executive Committee letter that served as the basis for the safeguards adopted by the Court at ECF No. 3435). The safeguards adopted by the Court on January 25, 2017 have served the plaintiffs in this MDL well over the past six-and-a-half years as the Court has facilitated the entry of judgments against Iran in favor of over 12,000 distinct claims.[3] The Court adopted the safeguards proposed by the PEC on January 23, 2017 and required that "all further motions for final judgment against any defaulting defendant shall be accompanied by a sworn declaration attesting that the attorney has (1) complied with the due diligence safeguards [set out in Section II.D of ECF No. 3433] and (2) personally verified that no relief has previously been awarded to any plaintiff included in the judgment (or, if relief has been awarded, the nature of that relief)." The various law firms consulted agree that these safeguards have been largely effective with only minimal issues arising.

At the time that the *Burnett* plaintiffs filed their motion for default judgment against the Taliban on September 26, 2022, they believed they had complied with the requirements of ECF No. 3435. Plaintiffs with dual representation have been the subject of extensive discussion and coordination among the various plaintiffs' law firms, and *Burnett* counsel specifically sought to ensure that all of these plaintiffs with dual representation were represented on a pending motion for default judgment. This was in conformance with the due-diligence safeguard of seeking to ascertain "that no prior relief has been obtained or has been sought by the same plaintiff." *See* ECF No. 3433 at 7. Clerical error in this review resulted in the duplication of fewer than five plaintiffs who had been included on previously filed motions.

Subsequent to the filing of the *Burnett* plaintiffs' motion, certain other firms filed motions to add plaintiffs—including some of these plaintiffs with dual representation—which the Court granted against the Taliban, and then, as a result of miscommunication among counsel, additional

---

[3] The U.S. Victims of State Sponsored Terrorism Fund reported in January 2023 that "there are 12,117 9/11-related eligible claimants," and all of these claims derive from this MDL. *See* United States Victims of State Sponsored Terrorism Fund, "Special Master's Report Regarding the Fourth Distribution," at 9, located as http://www.usvsst.com/docs/USVSSTFundCongressionalReport_Jan2023.pdf (last accessed August 30, 2023).



September 1, 2023
Page 3

motions for default judgment were filed that resulted in additional duplication of plaintiffs on the *Burnett* motion, and the subsequently filed motions for default judgment were granted by the Court prior to the Court addressing the *Burnett* motion. *See* ECF No. 9167 (granting default judgment in *Burlingame III*).[4]

As a result of duplications in the motions seeking default judgment against the Taliban, the Court has raised the question whether additional safeguards may be needed to ensure the integrity of the default motion process going forward. The collective response by the firms mentioned previously (who collectively represent over 95% of the death and death-related solatium claims in this MDL) is that additional safeguards are likely not necessary with a few limited caveats.

As an initial point, the duplication issue has not been a pervasive issue. Error may still occur as the Eubanks Declaration accompanying the *Burnett* motion recognized that "certain claims may be duplicated across the motions [for default judgment pending before the Court]; however, we have taken care not to do so to the extent this was at all possible." Even assuming there were ten duplicates at the time the motion was filed, the *Burnett* motion sought damages for 1,096 estates of individuals killed in the terrorist attacks; 4,689 claimants with solatium claims deriving from the deaths of individuals in the terrorist attacks; 131 claimants who sustained physical injuries on September 11, 2001; and sought a process for issuing judgment on claims requiring case-by-case determinations for another 1,217 named plaintiffs. *See* ECF No. 8561 (Exhibits B-1 through E-2). Duplication of ten out of 7,135 separate claimants represents 0.14% of the total number of claimants included on the *Burnett* motion and an even smaller percentage of the overall number of plaintiffs who have sought default judgment against the Taliban.

As it pertains to the cumulative list of individualized default judgments entered by the Court, Motley Rice LLC as Chair of the PEC has maintained this list to date. One caveat exists regarding the maintenance of a master list of every represented party in every action. While Motley Rice LLC has been the PEC's designee as the clearinghouse for this information, obtaining this information in a format that has been requested has not been completely successful based on the lack of participation by a limited number of firms within the MDL who have either not provided the lists requested or not provided their lists in the format necessary to incorporate into the master list to ensure that the master list of every represented party in every action has been kept up to date. An additional admonition from the Court regarding the necessity of providing this

---

[4] To be clear, nothing was improper in the motions to add plaintiffs, nor was it improper for default judgment to be sought for these plaintiffs in *Burlingame*. The sequencing of the entry of the judgments was a factor in the situation flagged by the Court in the August 11, 2023 Order. Counsel collectively believe they performed their due-diligence requirements, and after further consultation this week, are confident that the overlapping applications involving *Burnett* and *Burlingame III* reflect a unique circumstance that will not be repeated. The sheer scope of this mass tort and what it entails makes client management a challenge, but one counsel is well-prepared to meet.



September 1, 2023
Page 4

information (in the indicated form) to Motley Rice LLC as the PEC's designated clearinghouse will allow this list to be maintained in a manner that is actually reliable.

One option Motley Rice LLC further proposes is that the PEC establish a working group as permitted by CMO 3 (the CMO that established the PEC) to oversee the default-judgment process and ensure that the safeguards are being met. The individuals consulted in preparing this letter would be the natural place to begin in terms of establishing such a working group. The firms identified herein have an established working relationship while representing a vast majority of the plaintiffs, and we remain committed to doing whatever best assists the Court in issuing any remaining default judgments.

We submit that the safeguards currently employed by the Court have been effective to date in avoiding any large-scale issues. To the extent that the Court wishes to employ a means of identifying solatium plaintiffs related to latent-injury claimants or to identify death claims that arose from latent exposure as opposed to death on September 11, 2001, we support such measures as this will simplify the Court's appraisal of these claims. *Burnett* plaintiffs have a vested interest in re-filing their Taliban motion as promptly as possible while taking into consideration any additional guidance that may be forthcoming from the Court.

We look forward to appearing before you on September 6, 2023 and discussing these issues and any others that may arise between now and then.

Respectfully submitted,

John M. Eubanks

Cc:    All counsel of record (via CM/ECF)