UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br><br>ECF Case |

This document relates to:
*Burnett, at al. v. Al Baraka Inv. & Dev. Corp., et al., Case No. 03-cv-09849*

---

# BURNETT PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO SUDAN'S MOTION TO SET ASIDE CERTIFICATE OF DEFAULT

---

November 20, 2024

ROBERT T. HAEFELE
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com
*Counsel for the Burnett Plaintiffs*

# Table of Contents

Introduction ................................................................................................................................... 1

1. Sudan remains in default for its failure to file an Answer to Plaintiffs amended complaint, and the Certificate of Default should remain in force. ............................................ 2

2. The *Burnett* Plaintiffs are not obligated to file an amended complaint as a prerequisite for Sudan's obligation to file an Answer. ....................................................................... 4

3. Sudan has not met its burden of demonstrating "good cause" and is not entitled to relief from the Certificate of Default in *Burnett*. ............................................................ 6

   a. Sudan has not met its burden on the "good cause" criteria concerning "willfulness". ........................................................................................................... 7

   b. Sudan has not met its burden on the "good cause" criteria concerning the need to demonstrate a "meritorious defense". ............................................................. 11

   c. Sudan has not met its burden on the "good cause" criteria concerning the need to demonstrate an absence of "prejudice" to the *Burnett* Plaintiffs. ................... 11

4. Sudan's counsel acknowledge that they are not in contact with a Sudanese government representative with sufficient authority to direct Sudan's defense, underscoring the need for adherence to the Federal Rules of Civil Procedure. .................. 13

5. Sudan has repeatedly abused the public policy favoring resolution on the merits and should not be permitted to continue to do so. ............................................................... 14

Conclusion ................................................................................................................................. 15

# Table of Authorities

**Cases**

*Alexander Wf, LLC v. Lewis & Clark Expedition LLC*, Case No. 4:14-cv-68,
  2015 U.S. Dist. LEXIS 184968, (D.N.D. Apr. 22, 2015) ................................................................ 2, 3
*American Alliance Ins. Co., Ltd v. Eagles Ins. Co.*, 92 F.3d 57 (2d Cir. 1996) ......................................11
*Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873 (7th Cir. 1988) .................11
*Breuer Electric Manufacturing v. Toronado System of America*, 687 F.2d 182 (7th Cir.1982) ........................... 6
*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993) ........................................................... 6, 11
*Flanagan v. Islamic Rep. of Iran*, 190 F. Supp. 3d 138 (D.D.C. 2016) ............................................. passim
*Geis Constr. So., LLC v. Delahunt*, 20-CV-03834 (MKB) (JMW),
  2022 WL 18859052 (E.D.N.Y. Oct. 3, 2022) ...................................................................................... 6
*Hernández-Castrodad v. Steidel-Figuero*, No. 20-cv-1507 (SCC),
  2022 WL 715553 (D.P.R. Mar. 9, 2022) .......................................................................................... 2, 4
*In re Crysen/Montenay Energy Co.*, 226 F.3d 160 (2d Cir. 2000) ..................................................................... 5
*In re Terrorist Attacks on September 11, 2001*, Case 23-1319, Doc. 232 (2d Cir. Dec. 18, 2023) ............. 10
*Kumar v. Rep. of Sudan*, Lead Case No. 2:100-cv-171, 2016 WL 11808337
  (E.D.Va. Oct. 25, 2016) .......................................................................................................... 8, 9, 10
*Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir. 1984) ................................................................................... 6
*Mourmouni v. Permanent Mission of the Rep. of South Sudan to the United Nations*,
  20-CV-3603 (JPO), 2021 WL 4461829 (W.D.N.Y. Sept. 28, 2021) ..................................................... 2
*Parks v. Buffalo City School Dist.*, 17-CV-631S, 2020 WL 2079320 (W.D.N.Y. Apr. 30, 2020) .................. 2
*Pioneer Inc. Servs. Co. v. Brunswick Assocs., Ltd. P'ship*, 507 U.S. 380 (1993) ......................................... 9
*Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1551 n.19 (D.C. Cir. 1987) ....................... 15
*Securities Exchange Commission v. McNulty*, 137 F.3d 732 (2d Cir. 1998) .............................................. 11
*Sony Corp. v. Elm State Electronics, Inc.*, 800 F.2d 317 (2d Cir.1986) .................................................... 6, 11
*State Street Bank and Trust Co. v. Inversions Errazuriz, Ltd.*, 230 F. Supp. 2d 313 (S.D.N.Y. 2002) ........... 6
*Vega v. United States of America*, 00 Civ. 8920 (AGS), 2001 WL 823874 (S.D.N.Y. July 20, 2001) ......... 2

**Statutes**

28 U.S.C. § 1608(e) ............................................................................................................................. 1, 12

**Other Authorities**

*O'Connor's Federal Rules-Civil Trials* (2022) ............................................................................................ 2
Steven S. Gensler & Lumen N. Mulligan, *Federal Rules of Civil Procedure, Rules and Commentary*
  *Rule 12* (2022) .............................................................................................................................. 2
Wright, Miller & Kane, *Federal Practice and Procedure Civil 2d* § 2693 (2010) ......................................... 6

**Rules**

Fed. R. Civ. P. 12 ........................................................................................................................................ 5
Fed. R. Civ. P. 12(a)(4) ............................................................................................................................... 2
Fed. R. Civ. P. 12(a)(4)(A) ............................................................................................................ 1, 2, 3, 4

Fed. R. Civ. P. 12(a)(4)(B) .................................................................................................... 2  
Fed. R. Civ. P. 15 ............................................................................................................. 4, 5  
Fed. R. Civ. P. 15(a)(2) ........................................................................................................ 5  
Fed. R. Civ. P. 55 ................................................................................................................. 7  
Fed. R. Civ. P. Rule 11 ....................................................................................................... 13

**Introduction**

Plaintiffs in the *Burnett* action ("Plaintiffs") oppose Sudan's perfunctory motion and five-paragraph memorandum of law (ECF Nos. 10514, 10515[1], Nov. 6, 2024), seeking to set aside the Certificate of Default entered in *Burnett* against Sudan on November 6, 2024 (ECF No. 10506). This is Sudan's second extended absence, having previously been absent for 15 years, from the time of its original service on December 9, 2004, until it appeared in August 2020. ECF Nos. 10490, ¶¶ 3, 12, 13, 17; 2520, Ex. A; 6371; 6372; 6373. That absence resulted in the Court certifying Sudan's default on March 15, 2012 (ECF No. 2575, *see* ECF No. 10490 ¶ 16), which was later vacated only after Plaintiffs amended their complaint (*See* ECF No. 6539 (amending complaint) and ECF Nos. 9216, 9278 (setting aside default because of the amendment)). On September 24, 2024, the Second Circuit issued its mandate dismissing Sudan's appeal of this Court's August 10, 2023 Decision and Order (ECF No. 9278, "2023 Order") that denied in large part (though not entirely) Sudan's motion to dismiss. ECF No. 10396. Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure provided Sudan 14 days to file its Answer to Plaintiffs' amended complaint;[2] however, today marks the 57th day since the mandate was issued without Sudan filing its Answer or even seeking leave for an extension of time to do so. Based on Plaintiffs' proper showing of default (*see* ECF No. 10490), the Clerk of the Court entered a second Certificate of Default on November 6, 2024 (ECF No. 10506). Because Sudan's arguments are legally and factually flawed and fail to meet its burden to demonstrate the good cause essential to setting aside the Certificate of Default, the Court should not set the Certificate of Default aside. Rather, Plaintiffs should be permitted to proceed to default judgment proceedings pursuant to 28 U.S.C. § 1608(e).

---

[1] Unless indicated otherwise, all ECF references are to the docket in 03-md-1570 ("MDL 1570").

[2] Sudan does not dispute that Plaintiffs properly served the complaint, either initially in 2004 or in 2020, when Plaintiffs served the Consolidated Amended Complaint (hereinafter, "Complaint") via ECF. (ECF Nos. 10490, ¶ 3; 6539).

1

1. **Sudan remains in default for its failure to file an Answer to Plaintiffs amended complaint, and the Certificate of Default should remain in force.**

Because Sudan's motion to dismiss was largely denied (though not entirely), Fed. R. Civ. P. 12(a)(4)(A) required Sudan to answer, within 14 days of the entry date of the operative decision, each claim that was not dismissed. *Alexander Wf, LLC v. Lewis & Clark Expedition LLC*, Case No. 4:14-cv-68, 2015 U.S. Dist. LEXIS 184968, at *2-3 (D.N.D. Apr. 22, 2015); *Hernández-Castrodad v. Steidel-Figuero*, No. 20-cv-1507 (SCC), 2022 WL 715553, at *6-7 (D.P.R. Mar. 9, 2022); *O'Connor's Federal Rules-Civil Trials* (2022) ("If the order dismisses only some claims, the defendant will need to serve an answer or other responsive pleading for the remaining claims within 14 days after receiving notice of the ruling. See [Fed. R. Civ. P.] 12(a)(4)(A)."); *Steven S. Gensler & Lumen N. Mulligan, Federal Rules of Civil Procedure, Rules and Commentary Rule 12* (2022) ("If the court denies the [pre-answer] motion, or only some of the claims are dismissed, the responsive pleading is due within 14 days after notice of the court's order.").[3]

Applying a plain reading, Rule 12(a)(4) addresses the timing for responsive pleadings contemplated under Rule 12. Section (a)(4)(A) addresses the timing for responsive pleadings as to those parts of an order where a court denies a motion to dismiss. Section (a)(4)(B) addresses the timing for responsive pleadings where the court grants a more definite statement. The rule sets no deadline for responsive pleadings as to any part of an order where the court grants (in whole or in part) a motion to dismiss, because no responsive pleading is required as to those parts.

---

[3] *See, e.g., Parks v. Buffalo City School Dist.*, 17-CV-631S, 2020 WL 2079320, at *10 (W.D.N.Y. Apr. 30, 2020) (requiring defendant "to file an answer within 14 days of the entry date of this decision consistent with Rule 12(a)(4)(A)," after granting in part, and denying in part a motion to dismiss); *accord Vega v. United States of America*, 00 Civ. 8920 (AGS), 2001 WL 823874, at *3 (S.D.N.Y. July 20, 2001) (requiring defendant to "serve an answer to the complaint within the time specified by the Federal Rules of Civil Procedure" where the court had granted in part and denied in part a motion to dismiss); *Mourmouni v. Permanent Mission of the Rep. of South Sudan to the United Nations*, 20-CV-3603 (JPO), 2021 WL 4461829, at *4 (W.D.N.Y. Sept. 28, 2021) (directing defendant to answer remaining claims by deadline where court has granted in part and denied in part a motion to dismiss).

Sudan's argument that it has no obligation to answer the Complaint where the Court has broadly, but not wholly, denied a motion to dismiss is nothing short of gaslighting. Rule 12(a)(4)(A) applies because, within the meaning of the Federal Rules of Civil Procedure, Sudan's motion to dismiss was broadly "denied" as to most all the claims (notwithstanding Sudan's semantic parsing[4]). Sudan must answer the remaining claims (but need not answer claims the Court dismissed). There is no legal basis to ignore this requirement of the Rules; nor is there any purpose served in ignoring the requirement. Indeed, as to the claims the Court dismissed, Sudan may either omit them from its Answers or simply note that the claims were dismissed. But Sudan's effort to avoid answering the Complaint in any manner is transparently motivated by its desire to obstruct the proceedings because it is not prepared to actually participate in merits proceedings. Sudan hopes to invent new Rules, to restart the clock on all the claims against it.

While Sudan insists on a tortured interpretation of Rule 12(a)(4)(A) without citing support,[5] each authority Plaintiffs identified applies the same interpretation as Plaintiffs—namely, that Rule 12(a)(4)(A) applies to answers to complaints that have been the subject of orders that partially denied a motion to dismiss. For example, in *Alexander Wf.*, the court assessed a default entered after the defendant failed to file an Answer following an order that partially granted/denied a motion to dismiss. There, the court explicitly applied Rule 12(a)(4)(A)'s 14-day deadline, 2015 U.S. Dist. LEXIS 184968, at *2-3 (stating "Pursuant to Rule 12(a)(4)(A) …, [the defendant] … had fourteen (14) days after notice

---

[4] Sudan's argument (at 2-3) is premised unreasonably on the semantical distinction between whether the Court denied Sudan's motion in whole or in part. Plaintiffs clearly never concealed from the Court the results of this Court's own order denying Sudan's motion to dismiss, which was known to the Court and cited in each of the Plaintiffs' relevant filings. But whether Sudan was successful to any degree was *not* the relevant fact for determining Sudan's obligation to file an answer; Sudan is not required to answer the claims that the Court dismissed. Instead, Plaintiffs' filing focuses on the parts of the Court's order that denied Sudan's motion to dismiss, because those were the parts that required Sudan to answer. There can be no reasonable dispute that the Court overwhelmingly "denied" Sudan's motion as to most of the Counts, as to which Sudan must answer. As to those parts that the Court granted Sudan's motion, those parts are—for the purpose of filing an answer—immaterial, because Sudan had no obligation to answer those parts of the complaint.

[5] The absence of authorities supporting Sudan's reading is revealing of the frailty of its position. Moreover, the existence of only a limited set of authorities directly on point is a function of the absurdity of Sudan's position, which likewise shows the weakness of Sudan's argument.

3

of the court's action to file an answer…."). Similarly, in *Hernández-Castrodad*, the district court explicitly rejected Sudan's precise argument, where the defendant argued that, because the "'express language'" of Rule 12(a)(4)(A) "only applies to pre-answer motions that are denied," Rule 12(a)(4)(A) did not require the defendant to answer where the court had only partly denied a motion to dismiss. Instead, the district court applied the same interpretation Plaintiffs apply here, finding that "Rule 12(a)(4)(A) treats any disposition that leaves a claim remaining as a denial" and that "[a]s soon as [the defendant] received notice that the Court had granted in part and denied in part his motion to dismiss and that a claim remained, Rule 12(a)(4)(A) required him to file his answer within fourteen days." 2022 WL 715553, at *6-7 (D.P.R. Mar. 9, 2022).

Sudan's interpretation of the Rules would mean that the Rules impose no obligation on a defendant to file an answer or progress to merits proceedings if the court has denied a motion to dismiss in nearly every regard, but granted the motion in even the smallest part. Such a defendant would have no obligation to state, one way or another, whether allegations relating to claims proceeding to the merits—*i.e.,* the claims that were not dismissed—are true or admitted, making the basic conduct of discovery impossible and requiring court intervention in every such instance to initiate a most basic task of litigation—filing an answer.

2. **The *Burnett* Plaintiffs are not obligated to file an amended complaint as a prerequisite for Sudan's obligation to file an Answer.**

While Rule 12(a)(4)(A) resolves the issue before the Court (resulting in Sudan's default in *Burnett*), a plain reading of Rule 15 further dooms Sudan's argument that its obligation to answer the complaint is held in abeyance until Plaintiffs amend their Complaint to excise claims (including allegations supporting those claims) that were dismissed in the Court's 2023 Order (ECF No. 9278). The argument is a meritless and prejudicial pretense to conceal Sudan's failure to file a timely Answer.

Under Rule 15, Plaintiffs had neither an obligation nor the authority to amend their Complaint after the 2023 Order. In its argument (at 3), Sudan cites no precedent for its argument that amending

4

the Complaint was a prerequisite to its obligation to file Answers. Sudan omits any reference to Rule 15, the Rule that governs the filing of amended complaints. In the context that applies here (after Rule 15 deadlines for amendments as a matter of course), Rule 15(a)(2) permits amendments "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Indeed, while Sudan appears to read into Rule 12 the need for a court to act affirmatively (*i.e.*, the Court must take the affirmative step of issuing a scheduling order to initiate cases where motions to dismiss are partially denied, even to the smallest degree), it reads out of Rule 15 the need for the Court and the parties to act affirmatively to allow amendments. Here, Plaintiffs did not seek leave to amend, the Court did not grant leave (or otherwise order amendment), and Sudan could not have consented (in writing) where Plaintiffs had not requested consent. None of that happened to obligate plaintiffs to file the Amendments that Sudan suggests Plaintiffs must file. Accordingly, under Rule 15, not only were Plaintiffs not required to file amendments, but they were also not permitted to do so.

Plaintiffs also oppose Sudan's argument that it cannot answer until an amended complaint is filed based on the prejudicial impact of such an action. Plaintiffs would incur prejudice if they were obligated to file an amended complaint because such an amendment would trigger a right for Sudan to move to dismiss the claims again, which would once again restart the clock for Sudan. Similarly, amendment would also likely require new service in the cases where Sudan's counsel has refused to accept or waive service to this point. Finally, filing an amended complaint presents a risk that this amendment would supersede prior amendments and foreclose appellate rights that Plaintiffs may possess with regard to those claims that the Court denied in its 2023 Order.[6] None of the risks

---

[6] Plaintiffs should not be forced to bear needless risk to their appellate rights merely because Sudan prefers an approach that imposes that risk. For example, *In re Crysen/Montenay Energy Co.*, 226 F.3d 160 (2d Cir. 2000), which concerns whether a defendant expressly waived an affirmative defense by failing to reassert it in an amended answer, *id.* at 162, underscores the "well-settled" rule that amended pleadings ordinarily supersede original pleadings, and that the circuits are in dispute regarding whether removal of dismissed claims may result in abandonment of those claims on appeal. *Id.* Here, only Sudan wants the complaints amended, because it benefits from the results that would attach to amendments. The Court has not required amendments, Plaintiffs have not requested amendments, and the circumstances do not necessitate amendments.

5

attendant to amendments is necessary where amendments themselves are unnecessary for the case to proceed, either on the merits or in default.

### 3. Sudan has not met its burden of demonstrating "good cause" and is not entitled to relief from the Certificate of Default in *Burnett*.

Because Sudan has not met its burden of showing "good cause" to entitle it to have the Certificate of Default set aside, the Court should not set aside the Certificate of Default and should permit the *Burnett* Plaintiffs to proceed to default judgment proceedings. In determining whether to vacate the default, the single question is whether Sudan has demonstrated the necessary "good cause" to set the default aside. To address that question, the Court balances three criteria: (1) whether the default was willful; (2) whether the defendant demonstrates the existence of a meritorious defense; and (3) whether, and to what extent, vacating the default will cause the non-defaulting party prejudice. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir. 1984).

Sudan, the party moving to set aside the default, bears the burden of demonstrating all three factors—*i.e.*, that its default was not willful, that it has meritorious defenses, and that no prejudice would result from reopening the judgment. *State Street Bank and Trust Co. v. Inversions Errazuriz, Ltd.*, 230 F. Supp. 2d 313, 316 (S.D.N.Y. 2002); *Geis Constr. So., LLC v. Delahunt*, 20-CV-03834 (MKB) (JMW), 2022 WL 18859052, at *3 (E.D.N.Y. Oct. 3, 2022); *see Sony Corp. v. Elm State Electronics, Inc.*, 800 F.2d 317, 320 (2d Cir.1986) (citing *Wright, Miller & Kane, Federal Practice and Procedure Civil 2d* § 2693 at 478 (2010)). Sudan cannot meet its burden with mere conclusory statements. *Sony Corp.*, 800 F.2d at 320 (citing *Breuer Electric Manufacturing v. Toronado System of America*, 687 F.2d 182, 186 (7th Cir.1982)). If Sudan fails to make even one of the three showings, the Court should deny its request. *State Street Bank*, 230 F. Supp. 2d at 316.

---

Accordingly, Plaintiffs should not have that risk imposed on them, and the Court need not wade into the dispute or how it might be applied to the *Burnett* plaintiffs on appeal.

Each of the identified criteria have previously been weighed and balanced against Sudan in other terror cases where Sudan defaulted. In *Flanagan v. Islamic Rep. of Iran*, 190 F. Supp. 3d 138, 156 (D.D.C. 2016), the court weighed each of the considerations against Sudan and rejected Sudan's request to set aside non-final default judgments.[7] Soundly rejecting Sudan's request, the court worked through the factors, noting the willfulness of Sudan's defaults, *id.* at 156, the prejudice to the plaintiffs, *id.* at 159-60, and the lack of merits of its defenses, *id* at 160-83. The same considerations, balancing, and outcome applies here.

### a. Sudan has not met its burden on the "good cause" criteria concerning "willfulness".

Here, Sudan's perfunctory motion does little more than intone each of the three "good cause" criteria (at 2). The sole argument that Sudan posits (at 2-3) to support its assertion that it has not willfully defaulted is that, because it has no obligation to answer, it has "not failed to plead or defend itself (willfully or otherwise)" (at 2). But that argument fails because, for the reasons addressed to counter that argument, *see* discussion *supra* Point 1 at 2-4, Sudan had an obligation to answer and has willfully elected (even to this day) to decline to do so.

Sudan never expressly argues the civil unrest in Sudan amounts to "good cause," but it implies that the turmoil should excuse it from its failure to answer and that the Certificate of Default should be set aside in favor of proceedings on the merits. It implies that the Court should ignore Sudan's long history of delays and tactical gamesmanship and refrain from applying the obligations of the Federal Rules of Civil Procedure (to answer and proceed on the merits) because it has experienced periods of civil unrest. As an initial matter, this argument fails precisely because Sudan is not willing or prepared to proceed on the merits.

---

[7] Because the judgments were not final, the court applied the Rule 55 "good cause" standard applied to default.

7

Sudan has a long history of raising its internal turmoil as an excuse and feigned justification for its evasion of U.S. civil litigation obligations. In fact, Plaintiffs alerted the Court in 2020 that Sudan would likely raise the civil unrest issue again here. *See* ECF No. 10493-3 at 41-42 (Tr. of Conference at 40-41 (Aug. 5, 2020) (referring to *Flanagan*, 190 F. Supp. 3d at 156-158, summarizing Sudan's history of willful defaults in FSIA litigation). Particularly pertinent is that Sudan's evasive history suggests that, once it is pressed by the Court to engage on the merits, Sudan is likely to **_not_** authorize counsel to engage substantively, *see Kumar v. Rep. of Sudan*, Lead Case No. 2:100-cv-171, 2016 WL 11808337, at \*2 (E.D.Va. Oct. 25, 2016) (summarizing Sudan's tactical instruction to counsel not to defend in *Rux v. Rep. of Sudan*, Civil Action No. 2:04cv428 (E.D. Va.)), counselling in support of the default entered here.[8]

In *Flanagan* and *Kumar*, cases arising from the bombing of the U.S.S. Cole, after recounting Sudan's substantial history of refusing to defend itself in U.S. civil litigation, the courts rejected Sudan's "internal turmoil" excuse in the context of Sudan's efforts to set aside default judgments. *Flanagan*, 190 F. Supp. 3d 138, 156-157 (finding "unpersuasive" Sudan's excuse that it was "preoccupied by civil unrest and political turmoil at home"); *Kumar,* 2016 WL 11808337, at \*16-17. In *Flanagan*, after considering Sudan's history of litigating, and abandoning, other FSIA actions against it, the court "conclude[d] that Sudan's default . . . constituted a 'deliberate decision to default.'" *Flanagan*, 190 F.

---

[8] In *Rux v. Rep. of Sudan,* Civil Action No. 2:04cv428 (E.D. Va.), after Sudan's initial refusal to defend resulted in entry of default judgment, Sudan hired counsel who appeared and moved to vacate the default judgment. The court agreed to vacate the default judgment, but only after it confirmed that Sudan's counsel was authorized to appear and that it would remain Sudan's counsel throughout the proceedings. Later, after the Court denied Sudan's motion to dismiss and the Fourth Circuit affirmed that decision, Sudan's counsel told the court that Sudan instructed counsel "not to defend or otherwise participate in this proceeding on the merits, and that **[Sudan's counsel] is not authorized to file an answer to the complaint**." *Kumar*, 2016 WL 11808337, at \*3 (emphasis added). The position was reiterated later, when the Court ordered Sudan to answer following the filing of an amended complaint. *Id*. Still later, when the *Rux* plaintiffs moved to add new claims under new FSIA amendments, Sudan's counsel moved to withdraw, noting that Sudan had failed to pay legal fees and had long ago ceased communication with counsel. When the court denied that request and ordered Sudan to respond to the motion, Sudan's counsel again advised the court that **Sudan had instructed counsel "not to defend or otherwise participate in this proceeding on the merits."** *Id* (emphasis added).

8

Supp. 3d at 157. Deciding that Sudan had not met its burden, *id.* (citing *Pioneer Inc. Servs. Co. v. Brunswick Assocs., Ltd. P'ship*, 507 U.S. 380, 395 (1993)), the *Kumar* court found Sudan's litigation delay unreasonable considering its preceding litigation history and tactics demonstrating that it was capable of defending itself but often tactically *chose* not to do so, including in defiance of multiple court orders. *Kumar*, 2016 WL 11808337, at *17-18; *see also Flanagan*, 190 F. Supp. 3d at 157 (finding that Sudan's choice to deprioritize its litigation response to address domestic matters did not absolve it from defending). Even where Sudan supplied a declaration from a Sudanese government official (which it has not done here) to explain that its extended absences were "principally during periods of well-known civil unrest and political turmoil in Sudan," the *Flanagan* court rejected the excuse, noting that "nothing in the record indicate[d] that Sudan attempted, but was unable, to converse with attorneys, its counsel, or the Court, during the extended period of time." *Id.* at 157.

Sudan also has an established history of tactical delays in *this* multidistrict litigation, including in *this* case. It remained absent for over fifteen years and appeared only after it had been defaulted and faced default judgments. *See* ECF No. 10490, ¶ 17 (affirming Sudan failed to participate in the *Burnett* action for "more than fifteen years"); ECF Nos. 7942 at 2-4, 9278 at 3 (summarizing Sudan's absence from the litigation). When it finally appeared, it sought (as it has in the past) to excuse its extended absence due to "catastrophic civil war and natural disasters, followed by civil unrest." ECF No. 10493-3 at 38 (Transcript of Hearing, at 37 (Aug. 5, 2020)). But Sudan has never reckoned with the truth that this litigation has been pending for over 20 years, during which the civil unrest has been intermittent. Sudan has known of the litigation for decades and, aside from raising technical defenses, has declined to defend on the merits, even during periods of relative stability. Sudan was able to avoid the default previously entered only because Plaintiffs amended the complaint, and counsel for Sudan appeared

9

and represented that Sudan was now "actively litigating these cases pending against it." *id*. But Sudan should not be permitted to reintroduce its delay tactics to restart the cycle again.[9]

Sudan's reliance on the current state of the conflict sidesteps both Sudan's long history and its recent conduct in this litigation. Its old and new history of abandonment, coupled with periodic tactical engagement, warrant consistent application of the rationale applied in *Flanagan* and *Kumar* to find Sudan's default here willful. Fatal to Sudan's argument is that, while it bears the burden, its barebones motion offers no evidence that the unrest, which has been intermittent for decades, has prevented Sudan from meeting its obligation to answer in *Burnett*.

Setting aside that Sudan has offered no evidence in the record to support its argument, perhaps most damaging to Sudan's reliance on the current unrest is the fact that Sudan has continued to actively litigate technical defenses while the conflict has been ongoing. Sudan has long been aware of the claims against it. It retained counsel years ago and has communicated (during times of peace and tumult) throughout these proceedings. The record suggests that counsel had sufficient communication to retain counsel, file appearances, litigate to set aside defaults in 2020, litigate a motion to dismiss (including oral argument), and litigate an entire Second Circuit appeal. Even in the most recent weeks, while simultaneously arguing an inability to communicate with appropriate Sudanese authorities to "obtain instructions on important next steps," ECF No. 10532 at 3, Sudan's counsel continued to file motions and litigate technical defenses. Thus, just as in *Flanagan*, although Sudan may have been "preoccupied with pressing domestic matters and thus, affirmatively chose to deprioritize its response," the existing unrest may have been "reason to seek an extension of Sudan's deadlines," but they "do not absolve Sudan from its decision to wholly abdicate any defense in this case…." *Flanagan,* 190 F. Supp. 3d at 156-158. Assuming Sudanese officials and counsel have not been operating beyond

---

[9] In its briefing to the Second Circuit, Sudan raised its "civil unrest" issue as part of its *unsuccessful* argument in opposition to the Plaintiffs' motion to dismiss Sudan's appeal. *In re Terrorist Attacks on September 11, 2001*, Case 23-1319, Doc. 232 at 203 (2d Cir. Dec. 18, 2023).

10

their authorizations for the last four (or more) years, Sudan has made clear its capacity to continue to litigate. But consistent with its long practice, it has also made clear its unwillingness to engage on the merits.

### b. Sudan has not met its burden on the "good cause" criteria concerning the need to demonstrate a "meritorious defense".

Sudan's motion does even less to meet its burden to demonstrate the second criteria, asserting a meritorious defense. In its closing paragraph (at 4), Sudan rotely intones that it has meritorious defenses, coupled with a single conclusory assertion. Once in default, Sudan *cannot* present its defense by mere conclusory statements. *Sony Corp.*, 800 F.2d at 320. "In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a [certificate of default], the defendant ... must present evidence of facts that, 'if proven at trial, would constitute a complete defense.'" *Securities Exchange Commission v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) (quoting *Enron Oil Corp.*, 10 F.3d at 98). "To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage," but rather it must be "good at law so as to give the factfinder some determination to make." *American Alliance Ins. Co., Ltd v. Eagles Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (quoting *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)).

### c. Sudan has not met its burden on the "good cause" criteria concerning the need to demonstrate an absence of "prejudice" to the *Burnett* Plaintiffs.

Sudan was similarly rote (at 4) in intoning the prejudice criteria, arguing that Plaintiffs are not prejudiced because Plaintiffs still need to amend their complaint and Sudan's motion was filed the same day as the default was entered. Plaintiffs have explained elsewhere (*see* discussion *supra*, Point 2, at 4-6) that they are not obligated to file amended complaints and how that requirement would prejudice Plaintiffs. Sudan's suggestion that setting aside the defaults, and allowing Sudan to reset the clock, to decline to answer, or to evade progressing to merits is mere gaslighting. This is especially so

11

where, as here, Sudan has demonstrated repeatedly that it is not able to proceed meritoriously in the litigation. Therefore, default is appropriate.

The court in *Flanagan* also soundly addressed the prejudice to plaintiffs. "[A]ssessing prejudice, courts consider the possible, tangible harms that may flow from a party's delayed appearance in the case, including the 'loss of evidence, increased difficulties of discovery, and an enhanced opportunity for fraud or collusion.'" 190 F. Supp. 3d at 159 (quotations and citations omitted). Although the Court observed that "delay in and of itself does not constitute prejudice," it found "more than delay apparent in this case." *Id.* In *Flanagan*, where Sudan's delay was much shorter than the decade-long delay in *Burnett*, the court observed that, as the moving party, Sudan has the burden to show that vacating the defaults will pose *no prejudice*. There, as here, Sudan could not deny that prejudice resulted where, during the multi-year delay, "critical witnesses have died or been killed, numerous personnel at all levels of the government have left their positions, and undoubtedly governmental records have been destroyed." *Id.* Indeed, the court took judicial notice that at least one critical individual has died: Hassan al Turabi, the head of the National Islamic Front who offered Osama bin Laden and al Qaeda refuge in Sudan, was alive in 2010, years after Plaintiffs filed this lawsuit, but passed away on March 5, 2016. *Id.* at 160.

The *Flanagan* court's analysis of the evidence and finding that it supports causation as to general support for al Qaeda rebuts any real claim that Sudan could demonstrate a meritorious defense. Coupled with the findings regarding willfulness in ignoring U.S. litigation and the resultant prejudice to Plaintiffs, there is no basis to vacate the Certificate of Default here.

Because Sudan had an obligation to answer and failed to file a timely answer, Sudan has defaulted. Further, because Sudan has failed to meet its burden of showing good cause to set aside the default, the default should remain in place. Accordingly, the *Burnett* case, in which a Certificate of Default was entered, should be permitted to advance to default judgment proceedings, pursuant to 28 U.S.C. § 1608(e).

### 4. Sudan's counsel acknowledge that they are not in contact with a Sudanese government representative with sufficient authority to direct Sudan's defense, underscoring the need for adherence to the Federal Rules of Civil Procedure.[10]

The lawyers who have appeared for Sudan admit that they are no longer in contact with an official representative of the Sudanese government with authority to direct the litigation or to fulfill Sudan's obligations in defending Sudan in the litigation (*e.g.*, filing an Answer, compiling documents and other information responsive to discovery requests, etc.). ECF No. 10515 at 1, 10532 at 3. Although Sudan's counsel points to contact with the Sudanese Ambassador, the only support offered to suggest that the contact with the Ambassador suffices is that the Ambassador has previously accompanied counsel at legal proceedings. ECF No. 10532 at 3. But even Sudan's counsel acknowledge that the Ambassador remains unable to "connect with the appropriate authorities . . . to obtain instructions on important next steps in the litigation" *Id.* at 3. In short, the Ambassador lacks the authority or ability to direct merits proceedings on Sudan's behalf, or to fulfill Sudan's obligations in such proceedings. Nothing in the record—no declaration or other indicia of authority from Sudan—provides any assurance from the Ambassador or any authorized representative of Sudan that the person has authority to direct the litigation, or that Sudan is committed to moving forward to defend itself in the action. Indeed, Sudan's efforts to obstruct the case from proceeding on the merits, by torturing the Federal Rules and inventing processes the Rules do not contemplate or support, make clear that the Ambassador cannot even authorize the filing of an Answer that complies with Rule 11. In fact, the pendency of Sudan's counsel's filings to avoid defaults in *Burnett* and in other MDL cases

---

[10] Sudan's counsel are wrong where they assert that Plaintiffs "acknowledge … that Sudan's counsel has been attempting to confer with Sudanese government representatives." ECF No. 10515 at 1-2 (citing ECF No. 10493). In the cited letter, the Plaintiffs Executive Committees did not, and cannot, acknowledge that Sudan's counsel conferred with their client. The PECs simply quoted Sudan's counsel's assertion that they were "conferring with [their] client." ECF No. 10493. Plaintiffs cannot confirm what Sudan's counsel actually did, but their letter to the Court suggests that, if they sought to confer, whatever they attempted to do failed.

13

presents a conundrum: how could Sudan's counsel have obtained Sudan's authority to file the requests under consideration, but not to file Answers?

Specifically concerning Sudan's obligation to respond to Plaintiffs' amended complaint, in addition to counsel acknowledging that they have no authority to file an Answer, they have also offered nothing to indicate when they might be positioned to receive authority to respond to the pleadings. Especially where Sudan has a history of ignoring *this* litigation for more than fifteen years[11] and a history of tactically ignoring other litigation, including directing counsel not to defend,[12] Sudan cannot be allowed to continue to abdicate its defense for any indeterminant period.

The proper approach here, and the one required by ordinary application of the Rules, is for the Court to deny Sudan's motion to set aside the Certificate of Default, permit the Plaintiffs to proceed to judgment, and *if at some later date Sudan authorizes its counsel to file a proper application to set aside any judgment*, it may make that application at the appropriate time, and with the appropriate authority from its client to do so. But it should not be permitted to skirt the rules and allow its obligations to answer the Complaint to remain held in abeyance indefinitely.

5. **Sudan has repeatedly abused the public policy favoring resolution on the merits and should not be permitted to continue to do so.**

Sudan should not be permitted to continue its abuse of our nation's policy favoring resolution of disputes on the merits. Sudan intones our justice system's preference throughout its recurrent history of abusing that preference by evading litigation obligations for years (or decades) and then appearing only at a litigation's conclusion to challenge the Court's actions after-the-fact. Sudan argues that the purpose of the preference for merits-based resolution is to "encourage foreign sovereigns … to resolve

---

[11] *See, e.g.*, ECF Nos. 10490, ¶ 17 (affirming that Sudan failed to participate in the *Burnett* action for "more than fifteen years"); ECF Nos. 10492, ¶ 7(declaring that that Sudan failed to participate in the Federal Insurance action for "over fifteen years").

[12] *See* discussion *supra*, n.8.

14

disputes within the United States' legal framework." ECF No. 10515 at 2 (citing *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1551 n.19 (D.C. Cir. 1987)). But Sudan's historical abuse undermines that very purpose by encouraging courts to condone years of ignoring our nation's legal framework, rather than working within it. Steady application of the Rules encourages foreign states to work within the U.S. framework from the outset, not just to challenge the outcome after-the-fact.

## Conclusion

The Court should deny Sudan's motion to set aside the Certificate of Default in Burnett. For the second time in this case, Sudan is in default. Previously it defaulted for over 15 years; this time it already has been in default for nearly another two months. It has also defaulted in every other case in this MDL where it was sued. On this motion, it has failed to meet its burden to demonstrate the good cause necessary to set aside the default. It provided no evidence either to meet its burden or to show that it is prepared to file an Answer or fulfill any of its obligations in merits proceedings, and the available record shows that it is not. Despite its history of litigating technicalities, Sudan has not even taken the simple step of seeking an extension of time to file its responsive pleading—it simply ignored the deadline in hopes that no one would notice. Having already ignored this case for over 15 years, a demonstrated history of refusing to engage on the merits, and a penchant for relying on technical litigation tactics to delay its merits obligations, Sudan should not be permitted to continue as it has in the past. The Court should deny Sudan's motion and allow the Burnett Plaintiffs to proceed to default judgment proceedings.

Dated: November 20, 2024

Respectfully submitted,
MOTLEY RICE LLC

By: */s/ Robert T. Haefele*
ROBERT T. HAEFELE
28 Bridgeside Boulevard
Mount Pleasant, SC 29465
Tel.: (843) 216-9184
Email: rhaefele@motleyrice.com
*Counsel for the Burnett Plaintiffs*

15