# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN)<br>ECF Case |

**This Document relates to:**
*Burnett, et al. v. Al Baraka Inv. & Dev. Corp*., et al., No. 03-cv-9849 (GBD)(SN)

## *BURNETT* PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR ENTRY OF DEFAULT JUDGMENTS ON BEHALF OF NON-NATIONAL IMMEDIATE FAMILY MEMBERS OF NON-NATIONAL 9/11 DECEDENTS AGAINST THE TALIBAN

For the reasons stated herein and as set forth in the accompanying Declaration of John C. Duane (hereinafter "Duane Decl."), the *Burnett* Moving Plaintiffs herein who are the immediate family members who were non-U.S. nationals on September 11, 2001 (in this instance spouses, parents, children, and siblings, or the estate of a spouse, parent, child, or sibling) of non-U.S. national 9/11 decedents seek an Order entering judgment against The Taliban for intentional infliction of emotional distress and solatium damages under state law, on behalf of the Plaintiffs included in Exhibit A. Further, the *Burnett* Moving Plaintiffs seek prejudgment interest in the amount of 4.96%, compounded annually, from September 11, 2001 through the date of entry of the judgment for these Plaintiffs and leave to file for such other and further relief that may be appropriate at a later date including, but not limited to, punitive damages.

## PROCEDURAL BACKGROUND

Plaintiffs sued The Taliban in connection with the deaths of plaintiffs' decedents in the 9/11 Attacks. In their complaint, the Plaintiffs asserted numerous causes of action against The Taliban, including causes of action pursuant to state law[1] for intentional infliction of emotional

---

[1] As detailed in Exhibit A, two of the *Burnett* Moving Plaintiffs are family members of non-U.S. national 9/11 decedents who perished in the terror attacks at the Pentagon in Virginia. The remaining *Burnett* Moving Plaintiffs are

distress. *See Burnett* Third Amended Complaint (ECF No. 29 in Case No. 02-cv-01616-JR (D.D.C.)) at ¶¶ 671-676 (the "*Burnett* Complaint").

As noted in Exhibit A, many of the *Burnett* Moving Plaintiffs seek to extend judgment values previously entered by the Court within this MDL on behalf of these family member Plaintiffs who were non-United States nationals against the Islamic Republic of Iran and/or certain of its agencies and instrumentalities to the *Burnett* Moving Plaintiffs' claims against Defendant The Taliban under state law. As further noted in Exhibit A, some of these *Burnett* Moving Plaintiffs who do not have prior damages awards against the Iran Defendants seek to extend the rationale of prior Iran judgments, and the underlying values entered for immediate family members as solatium damages against the Iran Defendants, to the claims of the *Burnett* Moving Plaintiffs listed in Exhibit A who have not yet obtained such damages judgments against the Islamic Republic of Iran. These *Burnett* Moving Plaintiffs listed in Exhibit A are all immediate family members who were non-U.S. nationals on September 11, 2001, of non-U.S. national 9/11 decedents killed in the terrorist attacks on September 11, 2001, where the 9/11 decedent and the family member were either definitively not a U.S. national at the time of the events of 9/11 or where counsel has been unable to ascertain citizenship as of that time frame.

## ARGUMENT

## I.    This Court Possesses Subject Matter Jurisdiction Over The Taliban.

While the *Burnett* Moving Plaintiffs' claims against The Taliban arise under state law, Plaintiffs assert that this Court may exercise jurisdiction over these related claims against this Defendant under the doctrine of supplemental jurisdiction. Indeed, this Court has previously

---

family members of non-U.S. national 9/11 decedents who perished in the terror attacks in New York at the Twin Towers.

concluded that it possesses subject matter jurisdiction over the Plaintiffs' claims against The Taliban in this action that arise under the Anti-Terrorism Act (ATA), 18 U.S.C. **§** 2333. *See* ECF No. 10265, at 2.

Federal district courts have original subject matter jurisdiction over all civil actions "arising under" the "laws ... of the United States," 28 U.S.C. § 1331, which clearly includes causes of action brought pursuant to the ATA. This action arises under the laws of the United States. Supplemental jurisdiction extends to state law claims that so relate to the claims within the court's original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Claims derive from a common nucleus of operative fact when the facts underlying the claims "substantially overlap[ ]." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)); *also see Lopez v. J&L Sky Contractors Corp.,* No. 24-CV-7661, 2025 WL 1859690, at *4–5 (E.D.N.Y. July 7, 2025) (summarizing the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367(a)). The Second Circuit has "routinely upheld the exercise of [supplemental] jurisdiction where the facts underlying the federal and state law claims substantially overlapped." *Lyndonville Sav. Bank & Trust Co.,* 211 F.3d 697, 704 (2d Cir. 2000); *Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 335 (2d Cir. 2006).

Here, supplemental jurisdiction clearly extends to the *Burnett* Moving Plaintiffs' state law causes of action for intentional infliction of emotional distress under state law (*see Burnett* Complaint, at ¶¶ 671-676), because they substantially overlap with Plaintiffs' ATA-based claims.

Specifically, the Plaintiffs' ATA and non-ATA-based claims derive from the same underlying allegations and legal theories: that The Taliban provided material support, training, and safe haven to Al Qaeda and the 9/11 hijackers with knowledge of their planned attacks on U.S. targets, and that their material support caused the physical and emotional injuries and deaths of thousands of innocent victims, including the emotional injuries suffered by these *Burnett* Moving Plaintiffs. *See Burnett* Complaint at Introduction and ¶¶ 6-11, 43, 246, 343, 346, 391, 437-441, 451, 453, 645-652, 658-664, 671-676, 668-670, and pages 217-218. Thus, these state law claims arise from the same "common nucleus of operative facts" as the ATA claim. Accordingly, this Court should find that supplemental subject matter jurisdiction extends to the instant claims for intentional infliction of emotional distress under state law.

## II.    This Court Possesses Personal Jurisdiction Over the Taliban.

This Court has also previously concluded that it possesses personal jurisdiction over The Taliban in this lawsuit as it relates to the ATA-based claims of certain Plaintiffs in the *Burnett* action. *See* ECF No. 10265, at 2. The *Burnett* Moving Plaintiffs further assert that this Court has personal jurisdiction as to their state law claims under the doctrine of pendent personal jurisdiction.

Under the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process (like the ATA), and the federal and state claims "derive from a common nucleus of operative fact," *see United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available. *See also Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 88 (2d Cir. 2018) (same) and *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993) (same). The

*Herrmann* Court further noted that pendent personal jurisdiction is a discretionary doctrine. *Herrmann*, 9 F.3d at 1059.

As referenced above, the federal and state law claims asserted against The Taliban in the instant lawsuit derive from the same operative facts concerning The Taliban's provision of material support, training, and a safe haven to Al Qaeda and the 9/11 hijackers with knowledge of their planned attacks on U.S. targets. Thus, the Moving *Burnett* Moving Plaintiffs submit that there is personal jurisdiction over The Taliban with respect to both the ATA and state law claims asserted herein. *See Fed. Trade Comm'n by James v. Quincy Bioscience Holding Co., Inc.*, 389 F.Supp.3d 211, 219 (S.D.N.Y. 2019) (finding that a plaintiffs' federal and state law claims derived from the same set of operative facts which therefore provided for personal jurisdiction over the defendants with respect to both Federal Trade Commission Act and New York state law claims).

## III.    The Taliban Has Defaulted

The Taliban was added to the *Burnett* case pursuant to Case Management Order No. 2 on December 30, 2004, and service by publication (as permitted by a September 16, 2004 Order issued by Judge Richard C. Casey) was perfected on January 13, 2005. Proof of service was filed on March 4, 2005 and March 16, 2005, and The Taliban never answered.

The *Burnett* Plaintiffs subsequently moved for a Certificate of Default and default judgment, which this Court granted on April 7, 2006. *See* ECF No. 1756. That April 7, 2006, default judgment was entered in favor of 5,612 real parties in interest in the *Burnett* action at the time. On September 1, 2022, the Court granted Plaintiffs' motion to make explicit those plaintiffs whose claims were encompassed within the ambit of these real parties in interest and determined that these claims "relate[] back to when each of the individuals originally named in the pleading were added to this action." *See* ECF No. 8487. Since that time, the Court has granted several of

5

Plaintiffs' motions to add parties against the Taliban within the *Burnett* action and stated "[p]rior rulings, orders, and judgments entered in this case remain in effect as to all parties." *See* ECF No. 8696 at 2; *also see* ECF Nos. 9532, 9559, 9637, and 10959.

Following the entry of liability against The Taliban, this Court awarded damages against the Taliban pursuant to 18 U.S.C. § 2333 (the "ATA") to thousands of Plaintiffs who's loved one who was killed was a U.S. citizen on September 11, 2001 or who were themselves U.S. citizens on that date. Now, those Plaintiffs who do not qualify for judgments under the ATA due to their non-U.S. national status, as described above, seek entry of liability against The Taliban pursuant to state law. Further, the Plaintiffs on Exhibit A are the non-U.S. national family members of 9/11 decedents who were not U.S. citizens at the time of their death, and they seek solatium damages as set forth in Exhibit A.

## IV.    The Taliban is Liable Under State Tort Law

The *Burnett* Moving Plaintiffs ask the Court to find The Taliban liable under state tort law. These Plaintiffs assert that The Taliban is subject to suit under state tort law pursuant to the common law claims asserted by the *Burnett* Moving Plaintiffs in the aforementioned *Burnett* Complaint. *See Burnett* Complaint, at ¶¶ 671-676 (asserting a cause of action for Intentional Infliction of Emotional Distress against The Taliban and other Defendants).

### A.  Choice of Law

New York has different choice-of-law rules for different types of claims. Intentional Infliction of Emotional Distress (IIED) claims are considered "conduct-regulating," so the law of the " 'place of the tort' " controls. *Padula v. Lilarn Prop. Corp.*, 84 N.Y.2d 519, 522 (1994) (*quoting Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 196 (1985)). For current purposes, that "place" is the jurisdiction "where the last event necessary to make the [defendant liable occurred,"

6

even if "the defendant's [mis]conduct … occurred … in another [jurisdiction]." *Schultz*, 65 N.Y.2d at 195 (1985). As this Court explained in a prior Order on the choice of law issue in the instant context for non-U.S. national family members, the relevant events occurred when Al Qaeda terrorists crashed hijacked passenger jets into "the Twin Towers, a field near Shanksville, and the Pentagon." *See* ECF No. 9287 at 4. Accordingly, the claims brought by the family members of people killed in the attacks at the Twin Towers and the Pentagon are respectively governed by New York and Virginia law. New York law requires courts to analyze choice-of-law on a party-versus-party or tort-by-tort basis, not by looking at the case as a whole. *See Edwards v. Erie Coach Lines Co.*, 17 N.Y.3d 306, 329 (2011). Thus, the Court must analyze the IIED claims of the respective Moving Plaintiffs under New York and Virginia law.

**B.    Plaintiffs Have Properly Pleaded IIED Claims Under New York and Virginia Law.**

Under New York law, the following are the elements of an IIED claim: (1) extreme and outrageous conduct, (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress, (3) a causal connection between the conduct and injury, and (4) severe emotional distress. *Petkewicz v. Dutchess Cty. Dep't of Cmty. & Fam. Servs.*, 137 A.D.3d 990, 27N.Y.S.3d 264 (2016). Similarly, under Virginia law, a successful IIED claim includes the following elements: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe. *Harris v. Kreutzer*, 271 Va. 188, 203, 624 S.E.2d 24 (2006). As this Court has previously recognized, an IIED claim under either New York or Virginia law also generally requires that the plaintiff witness or be present for the outrageous conduct. *See* ECF No. 9287 at 6. However, as discussed *infra*, courts have concluded that the presence element of an IIED claim is not required in the special context of

7

family members suing terror groups (like The Taliban). *See, e.g.*, *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 42 (D.D.C. 2007) (collecting cases and discussing the exception to the presence element for an IIED claim under various state laws); *Republic of Sudan v. Owens*, 194 A.3d 38, 40 (D.C. 2018) (answering certified question from United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit")); and *Kumar v. Republic of Sudan*, 2019 WL 13251350, at 12-13 (E.D. Va. July 31, 2019) (finding that "presence" is not required in the "special context" of a civil suit against a state sponsor of terror).

With regard to the first four elements of an IIED claim under either New York or Virginia law, the *Burnett* Moving Plaintiffs submit that an act of terrorism is by definition extreme and outrageous and is intended to cause the highest degree of emotional distress. *Stethem v. Islamic Republic of Iran*, 201 F.Supp. 78, 89 (D.D.C. 2002). The *Burnett* Moving Plaintiffs with family members who perished at the Twin Towers and the Pentagon have clearly met the first four requisite elements of an IIED claim under both New York and Virgina state law. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD), 2011 WL 13244047 (S.D.N.Y. Dec. 22, 2011) (conclusions of law ¶¶ 18-35) (ECF No. 2515). This Court has previously found that "[t]he 9/11 terrorist attacks are contrary to the guarantees 'recognized as indispensable by civilized peoples.'" ECF No. 2515 at 50. Further, this Court also found that "plaintiffs have established that the 9/11 attacks were caused by Defendants' [including Iran's] provision of material support to al Qaeda," *id*. at 52, and met the solatium requirements under 1605A(c). *Id*. at 53.

The *Burnett* Moving Plaintiff's submit that the above analysis applies equally to The Taliban's provision of material support to Al Qaeda. *See Burnett* Complaint, at Introduction and ¶¶ 6-11, 43, 246, 343, 346, 391, 437-441, 451, 453, 645-652, 658-664, 671-676, 668-670, and pages 217-218. Under the above-referenced black letter law, this conduct clearly is "outrageous"

and "extreme," clearly disregarded "a substantial probability of causing, severe emotional distress" and caused resulting emotional distress. *See* ECF No. 10756, at 5-6 (wherein this Court found that Iran's material support for Al Qaeda was outrageous and caused resulting emotional distress to non-U.S. national family members under both New York and Virginia law); *also see* ECF. No. 10980, at 5-6 (reaching the same conclusion in applying New York law to the IIED claims of non-U.S. national family members). The Court should similarly conclude here that under New York and Virginia state law, the *Burnett* Moving Plaintiffs have met the first four elements of an IIED claim based upon The Taliban's actions in support of the 9/11 Attacks[2].

C.    **The "Presence" requirement in IIED cases is overruled in situations involving terrorism.**

As referenced above, courts in the District of Columbia, relying upon the Second Restatement of Torts[3], have specifically concluded that the "presence" element is not required to sustain an IIED claim in the unique context of a family member's civil suit against a terrorist organization like The Taliban for the death of a loved one. The District of Columbia's highest state court has confirmed that the IIED elements established in the Second Restatement of Torts provide the proper standard to apply. *Republic of Sudan v. Owens (Owens III)*, 194 A.3d 38, 41 (D.C. 2018). As the *Owens III* court explained, the "elements of an IIED claim arising from injury to a

---

[2] There can be little debate as to whether The Taliban sponsored Osama bin Laden and were behind the September 11, 2001 attacks. *See* U.S. National Commission on Terrorist Attacks upon the United States. 9/11 Commission Report: The Official Report of the 9/11 Commission and Related Publications. by Thomas H. Kean and Lee Hamilton, pp. 66-67, 125¬126, 157, 170-171, and 176.

[3] Like the District of Columbia, New York and Virginia have also adopted the Second Restatement's formulation of the cause of action for IIED. *See Taggart v. Costabile*, 131 A.D.3d 243, 249, 14 N.Y.S.3d 388, 393 (2015) (noting that the New York Court of Appeals first adopted the Second Restatement's formulation of intentional infliction of emotional distress in *Fischer v. Maloney*, 43 N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978)); and *Russo v. White*, 241 Va. 23, 26–27, 400 S.E.2d 160, 162–63 (1991) (noting that Virginia's approach to IIED claims, as established in *Womack v. Eldridge*, 215 Va. 338, 210 S.E.2d 145 (1974), was "patterned after the [Second] Restatement definition.")

member of the plaintiff's immediate family" are established by § 46 of the Restatement, which sets

out the following elements of IIED liability:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes
> severe emotional distress to another is subject to liability for such emotional
> distress, and if bodily harm to the other results from it, for such bodily harm.
> (2) Where such conduct is directed at a third person, the actor is subject to liability
> if he intentionally or recklessly causes severe emotional distress
>> (a) to a member of such person's immediate family who is present at the
>> time, whether or not such distress results in bodily harm, or
>> (b) to any other person who is present at the time, if such distress results in
>> bodily harm.

*Id*. (*quoting* the Second Restatement of Torts § 46 (1968)).

Importantly, the *Owens III* court went on to clarify that a claimant who alleges emotional

distress arising from a terrorist attack that injured or killed a family member need not have been

present at the scene of the attack to state a cognizable IIED claim for relief. *Id*. at 42–45. In other

words, the court "held that when emotional distress is caused by conduct directed at a member of

a plaintiff's family, the plaintiff must," as a general rule, be "present at the time" of the conduct in

order to make out an IIED claim[,]" but also "carved out" what it called 'the FSIA Terrorism

Exception' to the presence requirement" in the limited context of "cases brought under § 1605A,"

*Owens v. Republic of Sudan (Owens IV)*, 924 F.3d 1256, 1259 (D.C. Cir. 2019) (*quoting Owens

III*, 194 A.3d at 41, 42). The Court specifically found this exception to be permitted by the

comments to the Restatement itself. *See Owens III*, 194 A.3d at 42 (*citing* the Second Restatement

of Torts § 46 (1968) Caveat & cmt. i).

Thus, *Owens III* confirmed that the same general principles of tort law that govern the

claims brought by directly injured plaintiffs also govern claims brought by immediate family

members who pursued claims via District of Columbia law. Indeed, several other courts have

reached the same conclusion with regard to the "presence" requirement for a successful IIED claim

in the terrorism context. *See, e.g.*, *Peterson  v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 43–44 (D.D.C. 2007) (collecting cases and specifically finding that New York and Virginia law would allow IIED claims to be brought by family members in the terrorism context without having to establish a presence requirement); *Barry v. Islamic Republic of Iran*, 437 F.Supp.3d 15, 51 (D.D.C. 2020) (relying on *Owens III*  in finding that the presence element is not required in the unique context of IIED claims brought by family members against a state sponsor of terror); *Kumar v. Republic of Sudan*, 2019 WL 13251350, at *12-13 (E.D. Va. July 31, 2019) (finding that "presence" is not required in the "special context" of a civil suit against a state sponsor of terror); and *Maxwell  v. Islamic Republic of Iran*, No. 22-cv-173 (RC), 2024 WL 1342775, at *25 (D.D.C. Mar. 29, 2024) (same).

Similarly, the Moving Plaintiffs submit that under New York and Virginia law, they were not required to be present during the terror attacks at the Twin Towers and the Pentagon in order to sustain their IIED claims in this unique context of a civil suit against a terrorist organization.[4] As District of Columbia law demonstrates, courts (like New York and Virginia) that apply the Second Restatement have found that the Restatement's exception to the presence requirement for "conduct ... directed at a third person," *see* Second Restatement of Torts, § 46, comment 1, applies in FSIA cases because "a terrorist attack-by its nature-is directed not only at the victims but also at the victims' families." *Peterson  v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 43–44 (D.D.C. 2007) (citation and quotation omitted) (collecting cases and concluding that New York and Virginia would not apply a presence requirement given the severe nature of terrorist attacks). Thus, the *Burnett* Moving Plaintiffs submit that both New York and Virginia law would recognize this

---

[4] Alternatively, the *Burnett* Moving Plaintiffs argue that they have otherwise met the presence requirement for IIED claims as the tragic events of September 11, 2001, were broadcast live around the world in real time. These family members watched as the Twin Towers collapsed on their loved ones and the Pentagon burned following these terror attacks.

exception to the presence requirement in the instant matter as well. To hold otherwise would "do little more than shield culpable defendants (like The Taliban) from liability and deny relief to deserving plaintiffs." *Owens III*, 194 A.3d at 44; *see also* ECF No. 10756, at 5-6 (wherein this Court found that both New York and Virginia law would recognize this terrorism exception to the presence and contemporaneous perception requirements for state law IIED claims brought against the Iran Defendants by non-U.S. national family members); and ECF. No. 10980, at 6 (reaching the same conclusion in applying New York law to the IIED claims of non-U.S. national family members).

V.     **The *Burnett* Moving Plaintiffs are Entitled to Damages Against The Taliban**

A.     **Claims against The Taliban should be awarded damages in this case commensurate with those awarded under state tort law against the Islamic Republic of Iran.**

As an initial point, many of the *Burnett* Moving Plaintiffs identified in Exhibit A obtained prior damages judgments in collateral litigation against the Islamic Republic of Iran and certain of its agencies and instrumentalities for Iran's role in providing support to Al Qaeda in the years leading up to the terrorist attacks on September 11, 2001. As in the instant matter, these prior damages judgments obtained against Iran arose under state tort law. The only difference here is that the instant motion seeks damages for the same non-United States nationals against The Taliban for its role in providing support to Al Qaeda in the years leading up to the terrorist attacks on September 11, 2001.

B.     **The Court should extend to The Taliban previous default damages judgments entered for specific plaintiffs against the Iran Defendants.**

As noted in Exhibit A, many of the *Burnett* Moving Plaintiffs are the immediate family members who were non-U.S. nationals on September 11, 2001 (in this instance spouses, parents, children, and siblings, or the estate of a spouse, parent, child, or sibling) of non-U.S. national 9/11

12

decedents for whom a judgment has previously been entered by this Court against the Islamic Republic of Iran under state tort law. These Plaintiffs, as identified in Exhibit A, have obtained a damages default judgment against the Iran Defendants in the values set forth in Exhibit A. Through a series of orders issued in *Burnett, et al. v. Islamic Republic of Iran, et al.*, 15-cv-9903 (GBD)(SN), beginning on September 20, 2024, the Court has entered final default judgments against the Iran Defendants in favor of many of the non-United States national plaintiffs identified in Exhibit A. *See, e.g.*, ECF Nos. 10373, 10389, 10756, and 10980. Exhibit A sets forth those non-United States national family members for whom a prior damages judgment has been entered by this Court against Iran, with the value of the damages awarded. These *Burnett* Moving Plaintiffs now seek the application of those Iran judgment values as set forth on Exhibit A to be entered against The Taliban.

Here, consistent with the Court's practice, each of the *Burnett* Moving Plaintiffs on Exhibit A ask that the Court extend their existing default damages assessments to The Taliban and enter final judgment against The Taliban. This Court has already considered the legal arguments and evidence presented in the case against the Iran Defendants and issued monetary judgments against the Iran Defendants based on that evidence. The extension of that ruling to The Taliban, and entry of a final judgment pursuant to Rule 54(b) as to The Taliban, is both appropriate and the most efficient means of safeguarding each of the *Burnett* Moving Plaintiff's rights.

### C. Damages Should be Awarded to the *Burnett* Moving Plaintiffs Identified in Exhibit A Who Do Not  Have a Prior Damages Judgment

The *Burnett* Moving Plaintiffs identified in Exhibit A who have not previously received a damages judgment against Iran or any other Defendant in this MDL also request that this Court grant them partial default judgment as to damages against the Taliban. Plaintiffs respectfully submit that the Court should adopt and apply the same damages procedures here that the Court has

applied in this case to actions maintained under § 1605A and under the ATA with respect to U.S. citizen family members who had a loved one that perished in the 9/11 attacks. Equity dictates that non-U.S. national Plaintiffs be entitled to the same damages regime as had been applied to § 1605A claims throughout this case. *See* ECF No. 2618 at 14 (awarding *Havlish* plaintiffs common law damages against non-sovereign defendants in same amounts as § 1605A claims against Iran "under traditional tort principles" even though *Havlish* plaintiffs did not maintain Anti-Terrorism Act claims against these defendants and Section 1605A claims were inapplicable as to these defendants). Accordingly, the appropriate damages framework for Plaintiffs' common-law claims should be the same framework that has been applied to claims maintained under § 1605A, as set forth below. This is also true given the determination by this Court and others that there exists an "interest in promoting uniformity of determinations with respect to [state sponsored terrorist acts]." *See* ECF No. 3363 at 2; *also see* ECF No. 10756, at 5-6, and Exhibits A and B (wherein this Court awarded damages to non-U.S. national family members of 9/11 victims against the Iran Defendants according to an established framework developed for solatium claims); and ECF. No. 10980, at 6, and Exhibit B (same).

Accordingly, the appropriate damages framework for Plaintiffs' common-law claims should be the same framework that has been applied to claims maintained under § 1605A and the ATA as set forth below. This is further underscored by this Court's rationale as stated in the *King* case that "considerations of fairness dictate that the preexisting … damages framework applies to non-U.S. nationals as well." ECF No. 9666 at 9. Magistrate Judge Netburn's Report and Recommendation (adopted by the Court) provided a salient rationale that "doing so will promote the efficient adjudication of this litigation and, more importantly, restore a measure of parity to plaintiffs of different nationalities…. [T]he 9/11 Attacks did not just devastate U.S. nationals and

their families; they killed 372 people from over 90 countries and injured many more. And yet, non-U.S. nationals have not shared in the default judgments entered against Iran in this litigation—largely due to legal hurdles unique to their claims.  As we parse these issues and grant judgments in favor of non-U.S. national plaintiffs, justice demands that we honor their losses as we do those of U.S. nationals."  ECF No. 9506 a 14.

These *Burnett* Moving Plaintiffs identified in Exhibit A who do not possess prior damages judgments against the Iran Defendants now respectfully request that this Court grant them an Order awarding them (1) IIED damages for the losses they suffered as the immediate family members (in this instance, spouses, parents, children, and siblings, or the estate of a spouse, parent, child, or sibling) of their decedents in the same per plaintiff amounts previously awarded by this Court to U.S.-national solatium claimants under 28 U.S.C. § 1605A(c) and the ATA, namely, $12,500,000 to the spouse of a 9/11 decedent, $8,500,000 to the child of a 9/11 decedent, $8,500,000 to the parent of a 9/11 decedent, and $4,250,000 to the sibling of a 9/11 decedent.

When previously awarding solatium damages in this case under 28 U.S.C. § 1605A(c), this Court has looked at the framework established by District Judge Royce C. Lamberth in *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006), where the court awarded solatium damages to each spouse of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million.  *Id*. This formula, however, may be adjusted upward or downward when circumstances warrant.  *See, e.g., Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 1 50, 156 (D.D.C. 2011); *Valore*, 700 F. Supp. 2d at 85.

Analyzing the solatium claims of the families of the *Havlish* victims who perished in the 9/11 Attacks, Magistrate Judge Maas concluded that an upward departure from Judge Lamberth's

15

framework in *Heiser* was appropriate. In *Havlish*, Judge Maas explained that an upward departure was warranted because the decedents' immediate family members suffered, and continue to suffer, "profound agony and grief and, [w]orse yet, . . . are faced with frequent reminders of the events of that day." *See* ECF No. 2619 at 10-12. Judge Maas noted in his July 30, 2012 Report and Recommendation the "extraordinarily tragic circumstances surrounding the 9/11 Attacks and their indelible impact on the lives of the victims' families." *Id.* at 11. In that Report, with which this Court later agreed, Magistrate Judge Maas recommended that solatium damages be awarded to the immediate family members of the victims of the 9/11 Attacks in the following amounts:

| Relationship of Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

ECF No. 2619 at 11.

The solatium IIED damages suffered by the *Burnett* Moving Plaintiffs identified in Exhibit A before the Court in this application are legally and factually comparable to those suffered by the other plaintiffs in the *Burnett* Complaint and the plaintiffs in the *Havlish*, *Ashton*, *Bauer*, and *Hoglan* cases. Therefore, the *Burnett* Moving Plaintiffs identified on Exhibit A without prior Iran damages judgments respectfully request that the Court grant them awards of IIED damages in the same amounts awarded to other solatium claimants in this litigation.

### D. The Court should also award prejudgment interest for claims under the common law.

On the issue of prejudgment interest, as stated above, this Court previously ruled that the rate of prejudgment interest of 4.96 percent interest per annum compounded annually was appropriate. ECF No. 3383 at 2, *adopting* ECF No. 3358 at 16-20 (discussing the availability of prejudgment interest under federal and New York common law and determining, in the Court's

discretion, a prejudgment interest rate of 4.96%). Accordingly, the *Burnett* Moving Plaintiffs seeking claims under the common law and whose claims are ripe for current determination (i.e., the Plaintiffs included on Exhibit A) ask that this Court direct that prejudgment interest of 4.96 percent, compounded annually, be awarded on their awards running from September 11, 2001 to the date of judgment against The Taliban.

### E. Plaintiffs seek to reserve their rights to seek punitive damages, or other damages at a later time to the extent appropriate

As has been the practice in the Court in addressing many of the motions for default judgments, Plaintiffs herein seek the Court's permission to apply for punitive damages or other damages later consistent with any applicable future rulings and to supplement the record as part of applications for those damages. While the *Burnett* Moving Plaintiffs assert their entitlement to punitive damages, in light of prior differing decisions on the proper punitive multiplier (compare, e.g., ECF 3175 at 3 with ECF 3384 at 6), Plaintiffs request permission to reserve the issue of punitive damages until a later date as this Court has previously authorized. *See* ECF No. 3666.

## VI.    Proposed Order

For the Court's convenience and consideration, a proposed form of Order is being filed contemporaneously with this motion. The proposed Order tracks the language of the Court's 2006 Order, including judgment against The Taliban, and the Court's July 31, 2017 Order directing entry of final judgment against the Iran Defendants.

## CONCLUSION

For the foregoing reasons, the *Burnett* Moving Plaintiffs submit that a judgment awarding default damages under state law for the Plaintiffs identified on Exhibit A be awarded against Defendant The Taliban in the values set forth in those exhibits. Plaintiffs further submit that

prejudgment interest be applied to each judgment in the amount of 4.96%, compounded annually, from September 11, 2001 through the date of the entry of this judgment.

Plaintiffs further ask that the Court permit future motions that may address economic-loss damages, punitive damages, and such other and further relief as is permissible under state law.

Finally, as set forth in the Court's July 11, 2022 Order, any default judgment damages granted in this case against The Taliban is binding solely on the determination of damages against the Taliban and not against any of the other Defendants in this action.

Dated: September 25, 2025

Respectfully submitted,

MOTLEY RICE LLC

*/s/ John C. Duane*
John C. Duane, Esq.
Donald A. Migliori, Esq.
Jodi Westbrook Flowers, Esq.
John M. Eubanks, Esq.
Robert T. Haefele, Esq.
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel: (843) 216-9000
Fax: (843) 216-9450
Email: jduane@motleyrice.com