UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN)<br>ECF Case |

**This Document relates to:**
*Burnett, et al. v. Al Baraka Inv. & Dev. Corp*., et al., No. 03-cv-9849 (GBD)(SN)

### *BURNETT* PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR ENTRY OF DEFAULT JUDGMENTS FOR DEATH CLAIMS OF NON-U.S. NATIONALS AGAINST THE TALIBAN

For the reasons stated herein and as set forth in the accompanying Declaration of John C. Duane (hereinafter "Duane Declaration"), the *Burnett* Moving Plaintiffs herein who are the personal representatives of the estates of non-United States-national 9/11 decedents killed in New York City seek an Order entering judgment against The Taliban under New York state law, on behalf of the Plaintiffs included in Exhibits A and B. The *Burnett* Moving Plaintiffs also seek leave of the Court to submit evidence of economic-loss damages for the 9/11-decedents' estates set forth in Exhibit C for whom no prior economic-loss judgment against the Islamic Republic of Iran has already been awarded. Finally, Plaintiffs seek prejudgment interest in the amount of 4.96%, compounded annually, and as noted in Exhibits A and B, as well as leave to file for such other and further relief that may be appropriate at a later date including, but not limited to, punitive damages.

### PROCEDURAL BACKGROUND

Plaintiffs sued The Taliban in connection with the deaths of plaintiffs' decedents in the 9/11 Attacks. In their complaint, the Plaintiffs asserted numerous causes of action against the Taliban, including causes of action pursuant to state law for wrongful death and survival. *See* Burnett Third Amended Complaint (ECF No. 29 in Case No. 02-cv-01616-JR (D.D.C.)) at ¶¶ 658-664, 668-670.

For many of these non-U.S. nationals listed in Exhibit A, this motion seeks to extend conscious pain and suffering judgments entered within this MDL obtained under the common law and on behalf of certain Personal Representatives of 9/11-decedent estates (as identified in Exhibit A) against the Islamic Republic of Iran and/or certain of its agencies and instrumentalities to Plaintiffs' claims against Defendant The Taliban. Furthermore, for those non-U.S. national Plaintiffs listed on Exhibit B, many of these Plaintiffs have also previously received a prior damages judgment under the common law for economic loss in this MDL against the Iran Defendants. Those Plaintiffs are now seeking an equivalent economic loss damages judgment (as identified in Exhibit B) against The Taliban. Lastly, certain Plaintiffs identified in Exhibits A and B have not previously obtained a judgment for conscious pain and suffering or economic loss damages against the Iran Defendants or any other Defendant in this MDL, and they now seek to spread this Court's prior orders and judgments regarding the appropriate value of conscious pain and suffering damages and economic loss damages (as detailed in Exhibit C) under the common law in their cases.

## ARGUMENT

**I.    This Court Possesses Subject Matter Jurisdiction Over The Taliban.**

While the *Burnett* Moving Plaintiffs' claims against The Taliban arise under New York state law, Plaintiffs assert that this Court may exercise jurisdiction over these related claims against this Defendant under the doctrine of supplemental jurisdiction. Indeed, this Court has previously concluded that it possesses subject matter jurisdiction over the Plaintiffs' claims against The Taliban in this action that arise under the Anti-Terrorism Act (ATA), 18 U.S.C. § 2333. *See* ECF No. 10265, at 2.

Federal district courts have original subject matter jurisdiction over all civil actions "arising under" the "laws ... of the United States," 28 U.S.C. § 1331, which clearly includes causes of action

brought pursuant to the ATA. This action arises under the laws of the United States. Supplemental jurisdiction extends to state law claims that so relate to the claims within the court's original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Claims derive from a common nucleus of operative fact when the facts underlying the claims "substantially overlap[ ]." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)); *also see Lopez v. J&L Sky Contractors Corp.,* No. 24-CV-7661, 2025 WL 1859690, at *4–5 (E.D.N.Y. July 7, 2025) (summarizing the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367(a)). The Second Circuit has "routinely upheld the exercise of [supplemental] jurisdiction where the facts underlying the federal and state law claims substantially overlapped." *Lyndonville Sav. Bank & Trust Co.,* 211 F.3d 697, 704 (2d Cir. 2000); *Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 335 (2d Cir. 2006).

Here, supplemental jurisdiction clearly extends to the *Burnett* Moving Plaintiffs' state law causes of action for wrongful death and survival under New York state law (*Burnett* Third Amended Complaint, ECF No. 29 in Case No. 02-cv-01616-JR (D.D.C.) at ¶¶ 658-664, and 668-670), because they substantially overlap with Plaintiffs' ATA-based claims. Specifically, the Plaintiffs' ATA and non-ATA-based claims derive from the same underlying allegations and legal theories: that The Taliban provided material support, training, and safe haven to Al Qaeda and the 9/11 hijackers with knowledge of their planned attacks on U.S. targets, and that their material support caused the injuries and deaths of thousands of innocent victims, including the Plaintiffs in

3

the *Burnett* action. *See* Burnett Third Amended Complaint (ECF No. 29 in Case No. 02-cv-01616-JR (D.D.C.)) at Introduction and ¶¶ 43, 246, 343, 346, 391, 437-441, 451, 453, 645-652, 658-664, and 668-670. Thus, these state law claims arise from the same "common nucleus of operative facts" as the ATA claim. Accordingly, this Court should find that supplemental subject matter jurisdiction extends to the instant claims for wrongful death and survival under New York law.

## II. This Court Possesses Personal Jurisdiction Over the Taliban.

This Court has also previously concluded that it possesses personal jurisdiction over The Taliban in this lawsuit as it relates to the ATA-based claims of certain Plaintiffs in the *Burnett* action. *See* ECF No. 10265, at 2. The *Burnett* Moving Plaintiffs further assert that this Court has personal jurisdiction as to their New York-based state law claims under the doctrine of pendent personal jurisdiction.

Under the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process (like the ATA), and the federal and state claims "derive from a common nucleus of operative fact," *see United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available. *See also Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 88 (2d Cir. 2018) (same) and *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993) (same). The *Herrmann* Court further noted that pendent personal jurisdiction is a discretionary doctrine. *Herrmann*, 9 F.3d at 1059.

As referenced above, the federal and state law claims asserted against The Taliban in the instant lawsuit derive from the same operative facts concerning The Taliban's provision of material support, training, and a safe haven to Al Qaeda and the 9/11 hijackers with knowledge of their

planned attacks on U.S. targets. Thus, the Moving *Burnett* Plaintiffs submit that there is personal jurisdiction over The Taliban with respect to both the ATA and New York state law claims asserted herein. *See Fed. Trade Comm'n by James v. Quincy Bioscience Holding Co., Inc.*, 389 F.Supp.3d 211, 219 (S.D.N.Y. 2019) (finding that a plaintiffs' federal and state law claims derived from the same set of operative facts which therefore provided for personal jurisdiction over the defendants with respect to both Federal Trade Commission Act and New York state law claims).

### III.     The Taliban Has Defaulted

The Taliban was added to the *Burnett* case pursuant to Case Management Order No. 2 on December 30, 2004, and service by publication (as permitted by a September 16, 2004 Order issued by Judge Richard C. Casey) was perfected on January 13, 2005. Proof of service was filed on March 4, 2005 and March 16, 2005, and The Taliban never answered.

The *Burnett* Plaintiffs subsequently moved for a Certificate of Default and default judgment, which this Court granted on April 7, 2006. *See* ECF No. 1756. That April 7, 2006, default judgment was entered in favor of 5,612 real parties in interest in the *Burnett* action at the time. On September 1, 2022, the Court granted Plaintiffs' motion to make explicit those plaintiffs whose claims were encompassed within the ambit of these real parties in interest and determined that these claims "relate[] back to when each of the individuals originally named in the pleading were added to this action." *See* ECF No. 8487. Since that time, the Court has granted several of Plaintiffs' motions to add parties against the Taliban within the *Burnett* action and stated "[p]rior rulings, orders, and judgments entered in this case remain in effect as to all parties." *See* ECF No. 8696 at 2; *also see* ECF Nos. 9532, 9559, 9637, and 10959.

Following the entry of liability against The Taliban, this Court awarded damages against the Taliban pursuant to 18 U.S.C. § 2333 (the "ATA") to thousands of Plaintiffs who's loved one

5

who was killed was a U.S. citizen on September 11, 2001 or who were themselves U.S. citizens on that date. Now, those Plaintiffs who do not qualify for judgments under the ATA due to their non-U.S. national status, as described above, seek entry of liability against The Taliban pursuant to New York state law. Further, the Plaintiffs on Exhibits A and B are the personal representatives of 9/11 decedents who were not U.S. citizens at the time of their death who were killed in New York, and they seek damages for both pain-and-suffering and economic-loss as set forth in Exhibits A and B.

## IV.  The Taliban is Liable Under New York Tort Law

The *Burnett* Moving Plaintiffs ask the Court to find The Taliban liable under New York tort law. These Plaintiffs assert that The Taliban is subject to suit under state tort law pursuant to the common law claims asserted by the Burnett Moving Plaintiffs in the aforementioned Third Amended Complaint.

### A.  Choice of Law

As this Court has previously concluded, the last event necessary to make The Taliban liable occurred in New York. *See*, ECF No. 10756, at 4 (applying New York's choice-of-law rules in claims brought by non-U.S. nationals against the Iran Defendants). Accordingly, the Court should apply New York law herein as it has done in prior cases involving non-U.S. national victims who were killed in New York during the 9/11 Attacks.

### B.  Wrongful Death Claims

The Plaintiffs included on Exhibits A and B to the Duane Declaration are the Personal Representatives of the estates of non-U.S. nationals who were killed either aboard the airplanes that struck One World Trade Center or Two World Trade Center or individuals who were in the World Trade Center buildings or complex who died either from the impact of the airplanes, falling

6

debris, inability to leave the buildings before they collapsed, or other means as a direct result of the terrorist attacks on September 11, 2001.

### 1. The Taliban Are Liable for Wrongful Death Under New York Law

Under New York law, a "personal representative . . . may maintain an action to recover damages for a wrongful act . . . which caused the decedent's death against a [defendant] who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued." N.Y. Est. Powers & Trusts Law § 5-4.1. As previously addressed by this Court as related to the claims of non-U.S. nationals against the Iran Defendants, New York law imposes liability for (1) the "death of a human being" where (2) "a wrongful act, neglect or default … caused the decedent's death," (3) the decedent's survivors "suffered pecuniary loss by reason of the decedent's death," and (4) a "personal representative" has been appointed to represent the decedent. *See*, ECF No. 10756, at 4-5 (citing *Chamberlain v. City of White Plains*, 986 F. Supp 2d 363, 398 (S.D.N.Y. 2013)).

Claims for wrongful death under New York law are derivative of claims such as assault and battery. *See Campbell v. City of Yonkers*, Case No. 19-cv-2117 (VB), 2023 U.S. Dist. LEXIS 131985, at *46 (S.D.N.Y. July 31, 2023). Liability under New York law for assault and battery extends beyond the principal tortfeasor to those who aided and abetted them. *See Lindsay v. Lockwood*, 625 N.Y.S.2d 393, 396-98 (N.Y. Sup. Ct. 1994). In addressing how aiding-and-abetting liability under assault and battery applies to the facts in these cases as it related to Iran, Judge Daniels previously found:

> The al Qaeda hijackers committed assault and battery against Plaintiff. And, based on the evidence that Plaintiff has proffered—which Iran has admitted by virtue of its default—this Court agrees with Magistrate Judge Netburn's conclusion that Iran both knew of and substantially assisted al Qaeda's attacks on the United States. This Court adjudges Iran liable to Plaintiff.

7

ECF No. 9666 at 8 (adopting ECF No. 9506 at 8-13). Like Iran, the Taliban has admitted, by virtue of default, that it both knew of and substantially assisted al Qaeda's attacks on the United States on September 11th. *See*, Burnett Third Amended Complaint (ECF No. 29 in Case No. 02-cv-01616-JR (D.D.C.)) at Introduction and ¶¶ 43, 246, 343, 346, 391, 437, 438, 439, 440, 441, 451, 453, and 654-664. Indeed, there can be no question but that The Taliban sponsored Osama bin Laden and was behind the September 11, 2001 attacks.[1] Accordingly, the Taliban are liable to the *Burnett* Moving Plaintiffs for wrongful death under New York law notwithstanding their lack of U.S.-national status. *See* ECF No. 10756, at 5 (finding that the Iran Defendants were similarly liable to these non-U.S. national *Burnett* Plaintiffs under New York's wrongful death statute).

### C. Plaintiffs Seek an Award of Damages for Survival/Conscious Pain and Suffering Claims under New York Law

The *Burnett* Moving Plaintiffs further assert claims for "Survival" under Count Seven of the Third Amended Complaint in this case. *See* ECF No. 29 in Case No. 02-cv-01616-JR (D.D.C.), at ¶¶ 668-670.

#### 1. New York Law Provides a Remedy for Survival/Conscious Pain and Suffering.

Under New York law, "[n]o cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed." N.Y. Est. Power & Trusts Law § 11-3.2(b). The New York Court of Appeals has determined that "a personal injury action on behalf of the deceased under EPTL 11-3.2(b) seeks recovery for conscious pain and suffering of the deceased and any damages awarded accrue to the estate." *Heslin v. County of Greene*, 14 N.Y.3d 67, 76-77 (2010). New York courts have found that a survival action (or an action for

---

[1] U.S. National Commission on Terrorist Attacks upon the United States. 9/11 Commission Report: The Official Report of the 9/11 Commission and Related Publications. by Thomas H. Kean and Lee Hamilton, pp. 66-67, 125-126, 157, 170-171, and 176.

8

conscious pain and suffering) is separate and distinct from a wrongful-death cause of action. *Dunefsky v. Montefiore Hosp. Med. Ctr.*, 162 A.D.2d 300 (1st Dep't 1990). When addressing the claims for pain-and-suffering damages under New York's law for assault and battery for non-U.S. national plaintiffs within this MDL, this Court stated that "considerations of fairness dictate that the preexisting personal injury damages framework applies to non-U.S. nationals as well." ECF No. 9666 at 9. Here, these same considerations of fairness dictate that the preexisting conscious pain and suffering damages framework established for U.S. national decedent estates (in the amount of $2 million per estate) should be equally applied to the non-U.S. national decedent estates in the instant matter.

V.   **The *Burnett* Moving Plaintiffs are Entitled to Damages Against The Taliban**

**A. Claims against The Taliban should be awarded damages in this case commensurate with those awarded under state tort law against the Islamic Republic of Iran.**

As an initial point, many of the *Burnett* Moving Plaintiffs identified in Exhibits A and B obtained prior damages judgments in collateral litigation against the Islamic Republic of Iran and certain of its agencies and instrumentalities for Iran's role in providing support to Al Qaeda in the years leading up to the terrorist attacks on September 11, 2001. As in the instant matter, these prior damages judgments obtained against Iran arose under state tort law. The only difference here is that the instant motion seeks damages for the same non-United States nationals against The Taliban for its role in providing support to Al Qaeda in the years leading up to the terrorist attacks on September 11, 2001.

**B. The Court should extend to The Taliban previous default damages judgments entered for specific plaintiffs against the Iran Defendants.**

While this Court's orders set forth all of the claims encompassed by the default liability judgment entered by Judge Casey on April 7, 2006, the plaintiffs herein pursuing death claims

9

under state tort law are broken out into separate exhibits appended to the Duane Declaration. Many of the *Burnett* Moving Plaintiffs included in Exhibits A and B are the Personal Representatives of non-United States national 9/11-decedent estates for whom a judgment has previously been entered by this Court against the Islamic Republic of Iran under state tort law. These Plaintiffs, as identified in Exhibits A and B, have obtained a damages default judgment against the Iran Defendants in the values set forth in Exhibits A and B. Through a series of orders issued in *Burnett, et al. v. Islamic Republic of Iran, et al.*, 15-cv-9903 (GBD)(SN), beginning on September 20, 2024, the Court has entered final default judgments against the Iran Defendants in favor of the non-United States national plaintiffs as identified in Exhibits A and B. *See, e.g.*, ECF Nos. 10373, 10389, 10756, and 10980. Exhibits A and B set forth those non-United States national 9/11 decedent estates for whom a prior damages judgment has been entered by this Court against Iran, with the value of the damages awarded.

Here, consistent with the Court's practice, each of the *Burnett* Moving Plaintiffs on Exhibits A and B with existing liability default judgments against The Taliban, and who have secured monetary damage awards in the way of judgments against another defendant—namely, the Iran Defendants—ask that the Court extend their existing default damages assessments to The Taliban and enter final judgment against The Taliban. This Court has already considered the legal arguments and evidence presented in the case against the Iran Defendants and issued monetary judgments against the Iran Defendants based on that evidence. The extension of that ruling to The Taliban, and entry of a final judgment pursuant to Rule 54(b) as to The Taliban, is both appropriate and the most efficient means of safeguarding each of these *Burnett* Moving Plaintiff's rights.

### C. Damages Should be Awarded to the *Burnett* Moving Plaintiffs Who Do Not Have a Prior Damages Judgment

10

Some of the *Burnett* Moving Plaintiffs identified in Exhibits A and B are non-United States nationals that have not previously received a damages judgment against Iran or any other Defendant for pain and suffering damages and/or economic loss damages in this MDL. These plaintiffs now respectfully request that this Court grant them partial default judgment as to damages against the Taliban as noted in Exhibits A and B. Plaintiffs respectfully submit that the Court should adopt and apply the same damages procedures here that the Court has applied in this case to actions maintained under § 1605A. Equity dictates that non-U.S. national Plaintiffs be entitled to the same damages regime as had been applied to § 1605A claims throughout this case. *See* ECF No. 2618 at 14 (awarding *Havlish* plaintiffs common law damages against non-sovereign defendants in same amounts as § 1605A claims against Iran "under traditional tort principles" even though *Havlish* plaintiffs did not maintain Anti-Terrorism Act claims against these defendants and Section 1605A claims were inapplicable as to these defendants). Accordingly, the appropriate damages framework for Plaintiffs' common-law claims should be the same framework that has been applied to claims maintained under § 1605A, as set forth below. This is also true given the determination by this Court and others that there exists an "interest in promoting uniformity of determinations with respect to [state sponsored terrorist acts]." *See* ECF No. 3363 at 2.

> **D.    Damages for Claims Brought by Personal Representatives on Behalf of 9/11 Decedent Estates Who Died in New York**
>
> > **1. Economic-Loss Damages/Pecuniary-Loss Damages Under New York Wrongful Death Law**

The Plaintiffs identified on Exhibit B seek damages under New York's wrongful death statute because they were killed in and around the World Trade Center complex on September 11, 2001. Under New York wrongful-death law, "[d]amages are measured by the effect of the wrongful act on the distributees - - pecuniary loss suffered by the individual distributees as a result of decedent's death." *Hernandez v. New York City Health & Hosps. Corp.*, 78 N.Y.2d 687, 693

11

(N.Y. 1991). "There are four elements of compensable loss encompassed by the general term 'pecuniary loss': (1) decedent's loss of earnings; (2) loss of services each survivor may have received from decedent; (3) loss of parental guidance from decedent; and (4) the possibility of inheritance from decedent." *Hollingsworth v. Roseland Wake Park, LLC*, No. 6:18-CV-06013 MAT, 2019 U.S. Dist. LEXIS 206801, at *11-*12 (W.D.N.Y. Nov. 29, 2019), *quoting Huthmacher v. Dunlop Tire Corp.*, 309 A.D. 2d 1175, 1176 (4th Dep't 2003). The New York Court of Appeals outlined damages as "loss of support, voluntary assistance, and possible inheritance, as well as medical and funeral expenses incidental to death, are injuries for which damages may be recovered…. The 'pecuniary injuries' caused by a wage earner's death may be calculated, in part, from factors relevant to the decedent's earning potential, such as present and future earnings, potential for advancement and probability of means to support heirs, as well as factors pertaining to the decedent's age, character and condition, and the circumstances of the distributees." *See Gonzalez v. New York Housing Auth.*, 77 N.Y.2d 663, 668 (1991).

      This breakdown of damages available for pecuniary loss under New York's wrongful-death statute has been incorporated into the economic-loss expert reports issued by Plaintiffs' expert, Dr. Stan V. Smith, which have been appended to the Duane Declaration as Exhibit C and filed under seal for those Plaintiffs in Exhibit B who have not received a prior economic loss damages award previously against the Iran Defendants. In many instances, Dr. Smith has issued a full expert report and opined utilizing his standard methodology on the economic losses sustained by the individual decedents and their estates. These reports outline, introduce, and delve into the expert methodology that Dr. Smith has employed for these decedents while also providing a breakdown of the summary of both past and future losses for the following categories: (1) loss of wages and benefits; (2) loss

of pension benefits (if they exist); (3) loss of housekeeping and home management services; and (4) loss of value of life, also known as the loss of enjoyment of life.

As Dr. Smith states in these reports, "All opinions … are rendered in accordance with generally accepted standards within the field of economics and are expressed to a reasonable degree of economic certainty." These categories of loss accord with the elements of compensable loss that have been developed by the courts to address wrongful-death damages under New York law. All other expert reports submitted by Dr. Smith for the remaining decedents' estates included in Exhibit B are rendered in summary form while also stating the basis for certain assumptions, consumption rates, and other material economic data utilized to render these opinions. Therefore, Plaintiffs respectfully submit that the values for economic loss included on Exhibit B to the Duane Declaration be adopted for those noted claims as Exhibit B consists of individuals who were killed in New York on September 11, 2001 and who were not United States nationals at the time.

### 2. Survival/Pain and Suffering Damages for the New York Decedents Should Accord with the Court's Prior Determinations for Pain and Suffering Damages for U.S.-National 9/11 Decedents.

As set forth above, New York law accepts damages for survival/conscious pain and suffering. This Court previously assessed the entitlement and value of pain and suffering awards to estates of U.S.-national decedents in this litigation. *See* ECF No. 2618 at 7-9. Again, because the damages sought under the federal cause of action under 28 U.S.C. § 1605A(c) and the state common-law action for survival damages are indistinguishable, the Moving Plaintiffs submit that damages for survival/pain-and-suffering damages should be equivalent between U.S. national decedents and non-U.S. national decedents as their deaths were caused by the same act of terrorism—the terrorist attacks on September 11, 2001. Applying the same values for pain-and-suffering damages for the estates of those killed on September 11, 2001 would also follow the rationale adopted by the Court that "considerations of fairness dictate that the preexisting . . .

damages framework applies to non-U.S. nationals as well." ECF No. 9666 at 9. Therefore, for the reasons articulated by this Court in the context of this MDL, the estates identified in Exhibit A where a prior award for conscious pain and suffering judgment has not been awarded against the Iran Defendants respectfully request that the Court grant judgment for their decedents' survival/pain-and-suffering damages in the amount of $2,000,000 per estate. *See id*. at 9; ECF No. 2624 at 1, 3-4 (Judge Daniels awarding $2,000,000 per estate in *Havlish*).

### E. The Court should also award prejudgment interest for claims under the common law.

On the issue of prejudgment interest, as stated above, this Court previously ruled that the rate of prejudgment interest of 4.96 percent interest per annum compounded annually was appropriate. ECF No. 3383 at 2, *adopting* ECF No. 3358 at 16-20 (discussing the availability of prejudgment interest under federal and New York common law and determining, in the Court's discretion, a prejudgment interest rate of 4.96%). Accordingly, the *Burnett* Plaintiffs seeking claims under the common law and whose claims are ripe for current determination (i.e., the Plaintiffs included on Exhibits A and B) ask that this Court direct that prejudgment interest of 4.96 percent, compounded annually, be awarded on their awards as reflected in Exhibits A and B against The Taliban.

### F. Plaintiffs seek to reserve their rights to seek economic damages, punitive damages, or other damages at a later time to the extent appropriate

As has been the practice in the Court in addressing many of the motions for default judgments, Plaintiffs herein seek the Court's permission to apply for economic damages, punitive damages, or other damages later, consistent with any applicable future rulings and to supplement the record as part of applications for those damages. While the *Burnett* Plaintiffs assert their entitlement to punitive damages, in light of prior differing decisions on the proper punitive multiplier (compare, e.g., ECF 3175 at 3 with ECF 3384 at 6), Plaintiffs request permission to

reserve the issue of punitive damages until a later date, as this Court has previously authorized. *See* ECF No. 3666.

## VI.    Proposed Order

For the Court's convenience and consideration, a proposed form of Order is being filed contemporaneously with this motion. The proposed Order tracks the language of the Court's 2006 Order, including judgment against The Taliban, and the Court's July 31, 2017 Order directing entry of final judgment against the Iran Defendants.

## CONCLUSION

For the foregoing reasons, the *Burnett* Plaintiffs submit that a judgment awarding default damages under state law for the Plaintiffs identified on Exhibits A and B be awarded against Defendant The Taliban in the values set forth in those exhibits. Plaintiffs further submit that prejudgment interest be applied to each judgment in the amount of 4.96%, compounded annually, as set forth in Exhibits A and B. Plaintiffs further ask that the Court permit future motions that may address economic-loss damages, punitive damages, and such other and further relief as is permissible under state law.

Finally, as set forth in the Court's July 11, 2022 Order, any default judgment damages granted in this case against The Taliban is binding solely on the determination of damages against the Taliban and not against any of the other Defendants in this action.

Dated: September 25, 2025            Respectfully submitted,

                                             MOTLEY RICE LLC

                                             */s/ John C. Duane*
                                             John C. Duane, Esq.
                                             Donald A. Migliori, Esq.
                                             Jodi Westbrook Flowers, Esq.
                                             John M. Eubanks, Esq.
                                             Robert T. Haefele, Esq.

28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel: (843) 216-9000
Fax: (843) 216-9450
Email: jduane@motleyrice.com