UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-md-1570 (GBD)(SN)<br>ECF Case |

**This Document relates to:**
*Burnett, et al. v. Al Baraka Inv. & Dev. Corp.*, et al., No. 03-cv-9849 (GBD)(SN)

***BURNETT* PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR ENTRY OF PARTIAL DEFAULT JUDGMENTS FOR INJURY CLAIMS OF NON-U.S. NATIONALS AGAINST THE TALIBAN**

For the reasons stated herein and as set forth in the accompanying Declaration of John C. Duane (hereinafter "Duane Decl."), the *Burnett* Moving Plaintiffs listed in Exhibit A, who are non-United States-nationals who sustained injuries on 9/11 in New York City, seek an Order entering judgment against The Taliban under New York state law. The Moving Plaintiffs also seek prejudgment interest in the amount of 4.96%, compounded annually, from September 11, 2001 through the date of entry of the judgment and leave to file for such other and further relief that may be appropriate at a later date including, but not limited to, punitive damages.

## PROCEDURAL BACKGROUND

The *Burnett* Moving Plaintiffs sued The Taliban in connection with the injuries they sustained during the 9/11 Attacks. In their complaint, Plaintiffs asserted numerous causes of action against the Taliban, including causes of action pursuant to state law for assault and battery and aiding and abetting Osama bin Laden's and Al Qaeda's terrorist attacks on New York City on 9/11[1]. *See* Burnett Third Amended Complaint (ECF No. 29 in Case No. 02-cv-01616-JR (D.D.C.)) at ¶¶ 683-688 ("*Burnett* Complaint").

---

[1] Plaintiffs' complaint explicitly includes a cause of action for aiding and abetting, but Plaintiffs also allege facts which specifically charge The Taliban with legal responsibility for their personal injuries on 9/11. As discussed *infra*, these Plaintiffs have identified assault and battery causes of action based upon those uncontroverted factual

This motion seeks to extend judgment values previously entered by the Court within this MDL on behalf of these non-United States national Plaintiffs against the Islamic Republic of Iran and/or certain of its agencies and instrumentalities to the *Burnett* Moving Plaintiffs' claims against Defendant The Taliban under New York state law. Each of the Moving Plaintiffs listed in Exhibit A was injured in the terrorist attacks on September 11, 2001, in New York and was either definitively not a U.S. national at the time of their injuries or counsel has been unable to ascertain their citizenship as of the date of the 9/11 Attacks.

## ARGUMENT

**I.     This Court Possesses Subject Matter Jurisdiction Over The Taliban.**

While the Moving Plaintiffs' claims against The Taliban arise under New York state law, this Court may exercise jurisdiction over these related claims against this Defendant under the doctrine of supplemental jurisdiction. This Court has already concluded that it possesses subject matter jurisdiction over Plaintiffs' claims against The Taliban that arise under the Anti-Terrorism Act (ATA), 18 U.S.C. § 2333. *See* ECF No. 10265, at 2.

Federal district courts have original subject matter jurisdiction over all civil actions "arising under" the "laws ... of the United States," 28 U.S.C. § 1331, which clearly includes causes of action brought pursuant to the ATA. This action arises under the laws of the United States. Supplemental jurisdiction extends to state law claims that relate to claims within the court's original jurisdiction such that they form part of the same case or controversy. 28 U.S.C. § 1367(a). Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16

---

allegations as appropriate claims in the instant motion for default judgment. Thus, this Court should rely upon these theories of liability in reviewing the evidence to determine that these Plaintiffs are entitled to the relief sought.

L.Ed.2d 218 (1966)). Claims derive from a common nucleus of operative fact when the facts underlying the claims "substantially overlap[ ]." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)); *also see Lopez v. J&L Sky Contractors Corp.,* No. 24-CV-7661, 2025 WL 1859690, at *4–5 (E.D.N.Y. July 7, 2025) (summarizing the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367(a)). The Second Circuit has "routinely upheld the exercise of [supplemental] jurisdiction where the facts underlying the federal and state law claims substantially overlapped." *Lyndonville Sav. Bank & Trust Co.,* 211 F.3d 697, 704 (2d Cir. 2000); *Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 335 (2d Cir. 2006).

Here, supplemental jurisdiction clearly extends to the *Burnett* Moving Plaintiffs' New York state law causes of action (*Burnett* Complaint, at ¶¶ 683-688) because they substantially overlap with Plaintiffs' ATA-based claims. Both sets of claims derive from the same underlying allegations and legal theories: that The Taliban provided material support, training, and safe haven to Al Qaeda and the 9/11 hijackers with knowledge of their planned attacks on U.S. targets, and that their material support caused the injuries and deaths of thousands of innocent victims, including the Plaintiffs in the *Burnett* action. *See Burnett* Complaint, at Introduction and ¶¶ 43, 246, 343, 346, 391, 437-441, 451, 453, 645-652, 658-664, 668-670, and 683-688. Because these state law claims arise from the same "common nucleus of operative facts" as the ATA claim, this Court should find that supplemental subject matter jurisdiction extends to the instant New York state law claims.

**II.    This Court Possesses Personal Jurisdiction Over The Taliban.**

This Court has also previously concluded that it possesses personal jurisdiction over The Taliban in this lawsuit as it relates to the ATA-based claims of certain Plaintiffs in the *Burnett*

3

action. *See* ECF No. 10265, at 2. The *Burnett* Moving Plaintiffs assert that this personal jurisdiction extends to their New York state law claims under the doctrine of pendent personal jurisdiction.

Under the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process (like the ATA), and the federal and state claims "derive from a common nucleus of operative fact," *see United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available. *See also Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 88 (2d Cir. 2018) (same) and *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993) (same). While the *Herrmann* Court noted that pendent personal jurisdiction is discretionary, *Herrmann*, 9 F.3d at 1059, the doctrine applies here because both the ATA and state law claims asserted against The Taliban in the instant lawsuit derive from the same operative facts concerning The Taliban's provision of material support, training, and a safe haven to Al Qaeda and the 9/11 hijackers with knowledge of their planned attacks on U.S. targets. Thus, there is personal jurisdiction over The Taliban with respect to both the ATA and New York state law claims asserted herein. *See Fed. Trade Comm'n by James v. Quincy Bioscience Holding Co., Inc.*, 389 F.Supp.3d 211, 219 (S.D.N.Y. 2019) (exercising personal jurisdiction over the defendants with respect to both Federal Trade Commission Act and New York state law claims derived from the same operative facts.).

### III. The Taliban Have Defaulted

The Taliban was added to the *Burnett* case pursuant to Case Management Order No. 2 on December 30, 2004. Following a, September 16, 2004 Order by Judge Richard C. Casey permitting service by publication, service was perfected on January 13, 2005. Proof of service was filed on March 4, 2005 and March 16, 2005, and The Taliban never answered.

The *Burnett* Plaintiffs subsequently moved for a Certificate of Default and default judgment, which this Court granted on April 7, 2006. *See* ECF No. 1756. This default judgment was entered in favor of 5,612 real parties in interest in the *Burnett* action at the time. The Court later clarified the scope of this judgment on September 1, 2022, when it granted Plaintiffs' motion to make explicit those plaintiffs whose claims were encompassed within the ambit of these real parties in interest and determined that these claims "relate[] back to when each of the individuals originally named in the pleading were added to this action." *See* ECF No. 8487. Since that time, the Court has granted several of Plaintiffs' motions to add parties against The Taliban within the *Burnett* action, with each order stating that "[p]rior rulings, orders, and judgments entered in this case remain in effect as to all parties." *See* ECF No. 8696 at 2; *also see* ECF Nos. 9532, 9559, 9637, and 10959.

Following the entry of liability against The Taliban, this Court has awarded damages pursuant to the ATA to thousands of Plaintiffs who were U.S. citizens on September 11, 2001. The Plaintiffs listed in Exhibit A, however, do not qualify for ATA judgments due to their non-United States national status. These non-United States nationals who sustained injuries on 9/11 in New York City now seek damages for pain-and-suffering as set forth in Exhibit A.

IV.   **The Taliban are Liable Under New York Tort Law**

The *Burnett* Moving Plaintiffs ask the Court to find The Taliban liable under New York tort law. These Plaintiffs assert that The Taliban is subject to suit under state tort law pursuant to the common law claims asserted by the *Burnett* Moving Plaintiffs in the aforementioned *Burnett* Complaint.

A.  **Choice of Law Analysis**

As this Court has previously concluded, the last event necessary to make The Taliban liable occurred in New York. *See*, ECF No. 10756, at 4 (applying New York's choice-of-law rules

5

in claims brought by non-U.S. nationals against the Iran Defendants). Accordingly, the Court should apply New York law herein as it has done in prior cases involving non-U.S. national victims who were injured in New York during the 9/11 Attacks.

**B. The Taliban are Liable for Assault and Battery and Aiding and Abetting Under New York Law**

As in the *Burnett, et al. v. Islamic Rep. of Iran, et al.* ("*Burnett v. Iran*"), matter where these same non-U.S. national plaintiffs pursued default judgment damages against Iran for assault and battery under New York law, the *Burnett* Complaint does not explicitly include claims for assault and battery under New York law against The Taliban. But as this Court established in the *King* matter (*see In re Terrorist Attacks on Sept. 11, 2001* ("*In re 9/11*"), No. 03-md-01570 (GBD)(SN), 2024 WL 4268663 (S.D.N.Y. Jan. 5, 2024) ("*King R&R*"), *report and recommendation adopted by* 2024 WL 1312504 (Mar. 26, 2024) ("*King Opinion*") (holding that non-United States nationals may bring claims against Iran through section 1605B(b) and under New York's assault and battery law) and in the *Burnett v. Iran* matter (*see* ECF No. 10727, at 9-10 and ECF No. 10780, at 4-5), plaintiffs do not have to identify a specific source of law for their assault and battery claims when they plead factual allegations that clearly assert a defendant's legal responsibility for their personal injuries. As this Court explained in detail:

> The crux of default is a defendant's admission of the "factual allegations" laid out in the complaint. "[I]t remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action . . . ."
>
> In the FSIA context, "[w]hile [plaintiffs] d[o] not have to identify the specific source of law in [their] complaint," they must "do so at an appropriate time in the litigation." Plaintiff has certainly asserted assault and battery claims in the instant motion. This Court agrees with Magistrate Judge Netburn's conclusion that because (a) Plaintiff's complaint alleges facts which "cogently charge[] Iran with legal responsibility for his injuries," and (b) Plaintiff has clearly identified assault and battery causes of action in the instant motion, this Court may consider Plaintiff's assault and battery claims against Iran.

ECF No. 9666 at 6-7 (citations omitted).

The *Burnett* Moving Plaintiffs have precisely followed this precedent. These Plaintiffs pleaded factual allegations that clearly asserted The Taliban's legal responsibility for their personal injuries on 9/11:

- **"[T]he Taliban] knowingly and substantially assisted in the sponsorship of Osama bin Laden, al Qaeda, international terrorism and the September 11, 2001 terrorist attacks that killed and injured the Plaintiffs herein." "At the time of such aiding and abetting, [The Taliban] knew of should have known that its role was part of an overall and ongoing illegal, criminal and/or tortious activity." "[T]he Taliban] aided and abetted in concerted efforts, transactions, acts and activities designed to cause the attacks of September 11, 2001, on the United States, its citizens, foreign citizens, its liberties and freedoms."** "That [The Taliban's] aiding and abetting of international terrorism through material sponsorship was a proximate cause of the September 11, 2001 terrorist attacks that killed and injured the Plaintiffs." "As a direct and proximate result of [The Taliban's] aiding and abetting activities, Plaintiffs have suffered damages as set forth herein." *Burnett* Complaint, at ¶¶ 684-688.

- "Those entities and individuals that provided material support to the Taliban knew or should have known that **[The Taliban] were supporting the al Qaeda terrorist organization and Osama bin Laden. The Taliban openly armed, funded, trained, provided housing, transportation, communication, false documentation, identification, weapons, explosives, personnel, and currency to al Qaeda terrorists. The Taliban knowingly financed terrorist manufacturing facilities, schools and training camps, and harbored known criminals. [The Taliban] knew or reasonably should have known they were providing material support to terrorists and terrorist organizations who committed the September 11, 2001 savagery that murdered thousands of innocent people. [The Taliban] clearly knew, or clearly should have known, they were providing material support, aiding and abetting and enabling the terrorists that brutalized America and the world on September 11, 2001.** By knowingly, purposely, recklessly and in many instances maliciously engaging in international terrorist activity, [The Taliban's] acts were a proximate cause of the events of September 11, 2001, for which they are jointly and severally liable … The sponsorship of international terrorism was reasonably anticipated to cause additional senseless murders of innocent people such as those that occurred on September 11, 2001." *Burnett* Complaint, at pages 217-218.

- **Osama bin Laden and al Qaeda have admitted responsibility for the September 11, 2001 terrorist attacks. On September 11, 2001, al Qaeda co-conspirators, Mohammed Atta, Abdul Alomari, Wail al-Shehri, Waleed al-Shehri, and Satam al-Suqami hijacked American Airlines Flight 11, bound from Boston to Los Angeles, and crashed it into the North Tower, or Tower One, of the World Trade Center in New York. On September 11, 2001, al Qaeda co-conspirators, Marwan al-Shehhi, Fayez Ahmed (a/k/a Banihammad**

7

> **Fayez), Ahmed al-Ghamdi, Hamza al-Ghamdi, and Mohald al-Shehri hijacked United Airlines Flight 175, bound from Boston to Los Angeles, and crashed it into the South Tower, or Tower Two, of the World Trade Center in New York …** All nineteen (19) hijackers were members of Osama bin Laden's al Qaeda terrorist group. Fifteen (15) of the nineteen suicide hijackers were Saudi Arabian nationals. **All received sponsorship, training, support and funding through Osama bin Laden and his al Qaeda terrorist network. All Plaintiffs herein were killed and injured as a direct and proximate cause of the acts of these criminals, the acts of their al Qaeda co-conspirators and sponsors, and the acts of [The Taliban] herein to sponsor these reasonably foreseeable acts.** *Burnett* Complaint, at ¶¶ 6-8, 11.

And the *Burnett* Moving Plaintiffs have identified assault and battery as appropriate causes of action in the instant motion for default judgment. Further, the *Burnett* Complaint explicitly includes claims for aiding and abetting under New York law against The Taliban. *See* ¶¶ 683-688. This Court should rely upon these theories of liability in reviewing the evidence to determine that these plaintiffs are entitled to the relief sought.

Applying the above facts to New York's assault and battery and aiding and abetting laws, this Court should have "little trouble" finding The Taliban liable to these *Burnett* Moving Plaintiffs. *See King Opinion*, at *5 (noting that "[t]his Court has 'little trouble' in finding that the al Qaeda hijackers committed assault and battery against Plaintiffs]," and the Iran Defendants aided and abetted the 9/11 attacks); *also see* ECF No. 10780, at 5 (reaching the same conclusion in *Burnett v. Iran* for these same non-U.S. national plaintiffs against the Iran Defendants). Under New York law, assault and battery claims turn on largely overlapping elements. Committing an "assault involves putting" the plaintiff in "fear" or apprehension of a battery. *Rivera v. State*, 34 N.Y.3d 383, 389 (2019) (cleaned up). A battery, in turn, requires someone to "intentionally" and "unjustifiably" "cause" harmful or offensive "contact" with the plaintiff. *Id*. (cleaned up). This "contact" can be made by the person himself or "by means of an instrumentality." *Aberbach v. Biomedical Tissue Servs., Ltd.*, 48 A.D.3d 716, 718 (2d Dep't 2008).

Significantly, liability for assault and battery extends beyond the principal tortfeasor to

8

those who aided and abetted him. *See Lindsay v. Lockwood*, 625 N.Y.S.2d 393, 396–98 (N.Y. Sup. Ct. 1994). To prevail on an aiding and abetting theory, the plaintiff must show that: (1) a third party's "wrongful act" injured the plaintiff, (2) the defendant "knowingly and substantially assisted" the third party's misconduct, and (3) the defendant was "aware of his role" in "tortious activity" when he gave that assistance. *Id*. at 397 (cleaned up). A defendant's assistance may come in "words or [actions]," *McKiernan v. Vaccaro*, 168 A.D.3d 827, 830 (2d Dep't 2019), but must "connect[]" him to the misconduct that "caus[ed] the injury," *Lindsay*, 625 N.Y.S.2d at 397. When deciding whether a defendant's conduct meets this standard, New York courts consider "the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relations to the [tortfeasor,] and his state of mind." *Id*. (quoting Restatement (Second) of Torts § 876 cmt. d (Am. L. Inst. 1979)).

In plain language, The Taliban are liable for aiding and abetting assault and battery if: (a) Al Qaeda intentionally used a hijacked aircraft to injure and inspire fear in 9/11 victims, including the *Burnett* Moving Plaintiffs; and (b) The Taliban knew of Al Qaeda's plan to attack the United States and gave the terrorist organization substantial help in carrying out its strike. *See* ECF No. 10727, at 10-11 (describing in "plain terms" the showing needed from the non-U.S. national Plaintiffs in the *Burnett v. Iran* action in order for the Court to hold Iran liable for their injuries under New York law). The *Burnett* Moving Plaintiffs submit that the factual allegations asserted in the *Burnett* Complaint, which The Taliban have admitted by virtue of their default, leave little room for debate on either point. *See* ECF No. 10780, at 5 (wherein this Court held that the Al Qaeda hijackers committed assault and battery against the non-U.S. national plaintiffs in the *Burnett v. Iran* action and further concluded that the Iran Defendants aided and abetted the 9/11 attacks); *also see In re 9/11*, 2011 WL 13244047; ECF Nos. 9751, 9891.

The Plaintiffs' evidence establishes that the 9/11 hijackers committed assault and battery. Al Qaeda operatives turned passenger planes into weapons and used them to bring down the Twin Towers, terrorizing and injuring thousands within the collapse zone. *See Burnett* Complaint at ¶¶ 6-11; *also see In re 9/11*, 2011 WL 13244047, at *1. The fear and physical trauma these victims experienced was unquestionably "intentional and offensive," *Rivera,* 34 N.Y.3d at 389—the direct product of Al Qaeda's use of an aircraft as an "instrumentality" of destruction, *Aberbach*, 48 A.D.3d at 718.

The Plaintiffs' uncontroverted submissions similarly establish that The Taliban aided and abetted the 9/11 Attacks. The Taliban knew of the plan to crash hijacked civilian airliners into American cities. *See Burnett* Complaint at ¶¶ 684-688, and pages 217-218. The Taliban provided direct support to Al Qaeda specifically for the 9/11 attacks in the form of planning, funding, facilitation of the hijackers' travel and training, and logistics. *Id*. This material support, knowingly provided by the Taliban, clearly improved the likelihood of the operational success of the 9/11 plot that caused the injuries to the Burnett Moving Plaintiffs. *Id*. Similarly, other sources have specifically concluded that The Taliban sponsored Osama bin Laden and were behind the September 11, 2001 attacks[2]. New York courts have deemed people liable for aiding and abetting battery based on far less "substantial" assistance. *See Lindsay*, 625 N.Y.S.2d at 397; *see, e.g., Wilson v. DiCaprio*, 278 A.D.2d 25 (1st Dep't 2000) (affirming liability for assault and battery where defendant shouted encouragement for principal tortfeasors).

Taken as a whole, the Court should find that this evidence establishes the elements of assault and battery and aiding and abetting under New York law against The Taliban.

---

[2] U.S. National Commission on Terrorist Attacks upon the United States. 9/11 Commission Report: The Official Report of the 9/11 Commission and Related Publications. by Thomas H. Kean and Lee Hamilton, pp. 66-67, 125-126, 157, 170-171, and 176.

Accordingly, the Court should enter a liability judgment on behalf of the *Burnett* Moving Plaintiffs for their personal injuries suffered during the 9/11 attacks.

V. **The *Burnett* Moving Plaintiffs are Entitled to Damages Against The Taliban**

**A. Claims against The Taliban should be awarded damages in this case commensurate with those awarded under state tort law against the Islamic Republic of Iran.**

As an initial point, the *Burnett* Moving Plaintiffs identified in Exhibit A obtained prior damages judgments in collateral litigation against the Islamic Republic of Iran and certain of its agencies and instrumentalities for Iran's role in providing support to Al Qaeda in the years leading up to the terrorist attacks on September 11, 2001. As in the instant matter, these prior damages judgments obtained against Iran arose under state tort law. The only difference here is that the instant motion seeks damages for the same non-United States nationals against The Taliban for its role in providing support to Al Qaeda in the years leading up to the terrorist attacks on September 11, 2001.

**B. The Court should extend to The Taliban previous default damages judgments entered for specific plaintiffs against the Iran Defendants (Exhibit A).**

While this Court's orders set forth all of the claims encompassed by the default liability judgment entered by Judge Casey on April 7, 2006, the Plaintiffs herein pursuing personal injury claims under state tort law are delineated in Exhibit A which is appended to the Duane Declaration. The *Burnett* Moving Plaintiffs included in Exhibit A are non-United States-nationals that sustained injuries on 9/11 in New York City for whom a judgment has previously been entered by this Court against the Islamic Republic of Iran under state tort law. The *Burnett* Moving Plaintiffs identified in Exhibit A have obtained a default damages judgment against the Iran Defendants in the values set forth in Exhibit A. Through a series of orders issued in *Burnett, et al. v. Islamic Republic of Iran, et al.*, 15-cv-9903 (GBD)(SN), beginning on September 20, 2024, the Court has entered final

11

default judgments against the Iran Defendants in favor of the non-United States national plaintiffs identified in Exhibit A. *See, e.g.*, ECF Nos. 10373, 10389, 10756, and 10980. Exhibit A sets forth those non-United States national 9/11 personal injury plaintiffs for whom a prior damages judgment has been entered by this Court against Iran, with the value of the damages awarded.

The *Burnett* Moving Plaintiffs identified on Exhibit A who are non-United States nationals that sustained injuries on 9/11 in New York City previously obtained judgments for pain and suffering damages as to the Islamic Republic of Iran, and they now seek the application of those judgment values as set forth on Exhibit A to be entered against The Taliban.

Consistent with the Court's practice, each of the *Burnett* Moving Plaintiffs on Exhibit A with existing liability default judgments against The Taliban, and who have secured monetary damage awards in the way of judgments against another defendant—namely, the Iran Defendants—ask that the Court extend their existing default damages assessments to The Taliban and enter final judgment against The Taliban. This Court has already considered the legal arguments and evidence presented in the case against the Iran Defendants and issued monetary judgments against the Iran Defendants based on that evidence. The extension of that ruling to The Taliban, and entry of a final judgment pursuant to Rule 54(b) as to The Taliban, is both appropriate and the most efficient means of safeguarding each of the *Burnett* Moving Plaintiff's rights.

### C. The Court should also award prejudgment interest for claims under the common law.

On the issue of prejudgment interest, as stated above, this Court previously ruled that the rate of prejudgment interest of 4.96 percent interest per annum compounded annually was appropriate. ECF No. 3383 at 2, *adopting* ECF No. 3358 at 16-20 (discussing the availability of prejudgment interest under federal and New York common law and determining, in the Court's discretion, a prejudgment interest rate of 4.96%). Accordingly, the *Burnett* Plaintiffs seeking

12

claims under the common law and whose claims are ripe for current determination (i.e., the Plaintiffs included on Exhibit A) ask that this Court direct that prejudgment interest of 4.96 percent, compounded annually, be awarded on their awards running from September 11, 2001 to the date of judgment against The Taliban.

### D. Plaintiffs seek to reserve their rights to seek economic damages, punitive damages, or other damages at a later time to the extent appropriate

As has been the practice in the Court in addressing many of the motions for default judgments, Plaintiffs herein seek the Court's permission to apply for economic damages, punitive damages, or other damages later, consistent with any applicable future rulings and to supplement the record as part of applications for those damages. While the *Burnett* Plaintiffs assert their entitlement to punitive damages, in light of prior differing decisions on the proper punitive multiplier (compare, e.g., ECF 3175 at 3 with ECF 3384 at 6), Plaintiffs request permission to reserve the issue of punitive damages until a later date, as this Court has previously authorized. *See* ECF No. 3666.

## VI. Proposed Order

For the Court's convenience and consideration, a proposed form of Order is being filed contemporaneously with this motion. The proposed Order tracks the language of the Court's 2006 Order, including judgment against The Taliban, and the Court's July 31, 2017 Order directing entry of final judgment against the Iran Defendants.

## CONCLUSION

For the foregoing reasons, the *Burnett* Plaintiffs submit that a judgment awarding default damages under state law for the Plaintiffs identified on Exhibit A be awarded against Defendant The Taliban in the values set forth in that exhibit. Plaintiffs further submit that prejudgment interest

be applied to each judgment in the amount of 4.96%, compounded annually, from September 11, 2001 through the date of the entry of this judgment.

Plaintiffs further ask that the Court permit future motions that may address economic-loss damages, punitive damages, and such other and further relief as is permissible under state law.

Finally, as set forth in the Court's July 11, 2022 Order, any default judgment damages granted in this case against The Taliban is binding solely on the determination of damages against the Taliban and not against any of the other Defendants in this action.

Dated: September 25, 2025

Respectfully submitted,

MOTLEY RICE LLC

*/s/ John C. Duane*
John C. Duane, Esq.
Donald A. Migliori, Esq.
Jodi Westbrook Flowers, Esq.
John M. Eubanks, Esq.
Robert T. Haefele, Esq.
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Tel: (843) 216-9000
Fax: (843) 216-9450
Email: jduane@motleyrice.com