**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

In re:

      **TERRORIST ATTACKS ON**
      **SEPTEMBER 11, 2001**

-------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   8/5/2026
```

**03-MD-01570 (GBD)(SN)**

**REPORT &**
**RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

      Burnett v. Al Baraka Inv. & Dev. Corp., No. 03-cv-09849 (GBD)(SN)

      Two groups of Burnett Plaintiffs (the "Plaintiffs") move for partial default judgments

against the Taliban. ECF Nos. 11295, 11299.[1] The Plaintiffs were all United States nationals on

September 11, 2001, and thus they bring their claims under the Anti-Terrorism Act, 18 U.S.C.

§ 2333(a) ("ATA"). See ECF Nos. 11296 at 2–3, 11300 at 2–3. They argue that the Taliban

aided and abetted al Qaeda, facilitated the 9/11 Attacks, and caused the personal injuries and the

latent conditions that they developed following the Attacks. See ECF No. 11296 at 5–6. Many

Plaintiffs received prior pain and suffering awards against co-defendant the Islamic Republic of

Iran ("Iran"). Seven Plaintiffs request individual damages determinations for the first time.

      The Court recommends granting the Plaintiffs' motion at ECF No. 11299 and granting in

part the Plaintiffs' motion at ECF No. 11295. Five Plaintiffs in ECF No. 11295 do not provide all

the documents necessary for the entry of partial default judgments under the ATA. The Court

thus recommends denying these Plaintiffs' claims without prejudice to their refiling with

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

complete documentation. For all other Plaintiffs, however, the Court applies its established framework for assessing damages for personal injuries and latent conditions. If the Plaintiffs already received damages awards against Iran for the same injuries, the Court adopts its previous individual analyses under the same damages framework.

## BACKGROUND

The Court assumes familiarity with this multidistrict litigation and summarizes only the relevant procedural and factual background. The Burnett Plaintiffs initially filed their case on August 15, 2002, in the U.S. District Court for the District of Columbia. See No. 02-cv-01616, ECF No. 1 (D.D.C.). Their complaint sought to hold the alleged sponsors of the 9/11 Attacks liable for the resulting deaths and injuries, but it did not include the Taliban. Id. at 37–42. The Burnett Plaintiffs amended the complaint several times, adding plaintiffs and defendants to the case. See No. 02-cv-01616, ECF Nos. 3, 26, 29, 77, 313, 432 (D.D.C.); see also ECF No. 11297 ¶ 3 & n.1. The Judicial Panel on Multidistrict Litigation then transferred the Burnett case to this district for pretrial purposes on December 9, 2003. See ECF Nos. 1 at 3, 11297 ¶ 3.

Once in this district, the Burnett Plaintiffs added the Taliban as additional defendants. See ECF Nos. 247 at 6, 445 at 11, 11297 ¶ 4. Pursuant to Court order, the Burnett Plaintiffs then served the Taliban, along with all other defendants, by publication in both English and Arabic in December 2004 and January 2005. See ECF No. 445 at 1 (approving alternatives service); ECF Nos. 709, 735 (affidavits of service filed on March 4 and 16, 2005). The publication notices directed defendants to answer the complaints filed in the multidistrict litigation docket, No. 03-md-01570, within 60 days. See ECF No. 709 at 2, 4.

The Taliban failed to appear and never answered the complaint. The Burnett Plaintiffs therefore moved for entry of default, and the Court granted this motion on April 7, 2006. ECF No. 1756. The Court's default judgment on liability applied to all claims, all Burnett Plaintiffs,

2

and all defendants (including the Taliban) added to the case at the time. See id.; ECF No. 11296 at 2. The Court later granted the Burnett Plaintiffs' motion to further specify the plaintiffs encompassed by the April 7, 2006 liability judgment. See ECF No. 8487 at 2 (clarifying "the multiple capacities in which various plaintiffs are pursuing claims" for the plaintiffs named in the Burnett pleadings before the default judgment and holding that the granted amendments "relate[] back to" when the originally named plaintiffs were added). Certain plaintiffs were later substituted into or added to the Burnett case, and the Court has consistently recognized that "[p]rior rulings, orders, and judgments entered in this case remain in effect as to all parties," including newly added plaintiffs. ECF No. 8696 at 2; see, e.g., ECF Nos. 9532 at 2, 9559 at 2, 9637 at 2, 10959 at 2. The Plaintiffs thus represent that "[a]ll plaintiffs in this case added since the entry of the default judgment have been subject to all prior orders of the Court including th[e] default judgment as to liability against [t]he Taliban." ECF Nos. 11296 at 2, 11300 at 2.

The Plaintiffs now seek partial default judgments against the Taliban based on the liability judgment entered for all Burnett Plaintiffs and previous orders in this member case. See, e.g., ECF Nos. 1756 at 1, 10265 at 2. The Plaintiffs are all survivors of the 9/11 Attacks or participants in the ensuing rescue and recovery efforts. See ECF Nos. 11297 ¶¶ 15, 17, 11301 ¶¶ 15, 17. They seek pain and suffering damages for their personal injuries pursuant to the ATA.

## DISCUSSION

Rule 55(b)(2) of the Federal Rules of Civil Procedure authorizes the Court to enter default judgments against defendants who fail to appear in or defend cases against them. The Court follows a process with "two steps": (1) determining that the defendant defaulted and then (2) entering a default judgment. Nationsbank of Fla. v. Banco Exterior de Espana, 867 F. Supp. 167, 174 n. 9 (S.D.N.Y. 1994); see Fed. R. Civ. P. 55(a), (b)(2).

Step one has long been satisfied. The Plaintiffs properly served the Taliban, but the Taliban have not appeared in this case. See ECF Nos. 709, 735. The Court determined that the Taliban defaulted in 2006. See ECF No. 1756. This default judgment as to liability applied to all Burnett Plaintiffs at the time, including all of the Plaintiffs, who were each initially added to the case before the entry of the default judgment at ECF No. 1756. See ECF Nos. 11298-2, 11302-2 (listing "Complaint" information). Throughout many rounds of amendments to the Burnett pleadings, which have affected some Plaintiffs, the Court has also maintained that "[p]rior rulings, orders, and judgments entered in this case remain in effect as to all parties." ECF No. 8696 at 2; see ECF No. 8929 at 3 (finding that the Taliban's prior default applied to U.S. national plaintiffs added later).

Step two is now before the Court. The Plaintiffs request the entry of partial default judgments against the Taliban. In defaulting, a defendant admits "all of the factual allegations of the complaint, except those related to damages," and the plaintiff is "entitled to all reasonable inferences from the evidence offered." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). The Court must evaluate these admissions and evidence to determine whether there is "a sufficient basis in the pleadings" to establish the defendant's liability. Di Marco Constructors, LLC v. Sinacola, Inc., 407 F. Supp. 2d 442, 445 (W.D.N.Y. 2006) (cleaned up); accord Wagstaff-EL v. Carlton Press Co., 913 F.2d 56, 57 (2d Cir. 1990). If there is a sufficient basis, the Court assesses damages and may rely on the Plaintiffs' "affidavits or documentary evidence in lieu of an evidentiary hearing." DIRECTV, Inc. v. Hamilton, 215 F.R.D. 460, 462 (S.D.N.Y. 2003); see Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991). Through this process, the Court previously entered partial default judgments against the Taliban for the claims of U.S. nationals. See ECF No. 8929 at 14, adopted by ECF No. 8973 at 10; ECF No. 10265 at 2.

To grant the Plaintiffs' motions, the Court must resolve (1) whether it has jurisdiction to enter default judgment on the Plaintiffs' claims; (2) whether the Taliban are liable to the Plaintiffs under the ATA; and (3) if all else is true, what damages are due to the Plaintiffs.

## I.    The Court's Jurisdiction Is Sufficient for Default Judgment

The Plaintiffs assert claims against the Taliban pursuant to the ATA, 18 U.S.C. § 2333.[2] No. 02-cv-01616, ECF Nos. 1 at 250, 3 at 484, 29 at 381–82 (D.D.C.); see ECF Nos. 11296 at 3, 11300 at 3. The ATA permits "[a]ny national of the United States" or "his or her estate, survivors, or heirs" to sue for injuries caused by acts of terrorism. 18 U.S.C. § 2333(a). The Court must confirm that it has subject matter and personal jurisdiction sufficient to enter default judgment on these ATA claims. The Plaintiffs' claims clear both jurisdictional hurdles.

First, the ATA itself gives the Court subject matter jurisdiction over the Plaintiffs' claims. The ATA states that "[a]ny national of the United States injured in his or her person . . . by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States." 18 U.S.C. § 2333(a). It further provides that "[t]he district courts of the United States shall have exclusive jurisdiction over an action brought under this chapter." 18 U.S.C. § 2338. The "plain language" of these provisions gives this Court subject matter jurisdiction. Rubin v. Hamas-Islamic Resistance Movement, No.

---

[2] Plaintiffs in this litigation have characterized the Taliban as a non-sovereign unincorporated association. See, e.g., ECF No. 1463 ¶ 10. The jurisdictional restrictions and exceptions of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C § 1602 et seq., thus do not apply. See ECF Nos. 8973 at 9 n.8, 11927 at 4 n.4. Additionally, the Taliban served as the de facto government of Afghanistan for a period ending shortly after September 11, 2001 and, in 2021, again "seized de facto control over most of Afghanistan." See Havlish v. Taliban, 152 F.4th 339, 345–46 (2d Cir. 2025). The Court treats the Taliban as non-sovereign defendants, however, for two reasons. First, the United States has not recognized the Taliban as the government of Afghanistan, and the judicial branch cannot do so. See In re Terrorist Attacks on Sept. 11, 2001, 657 F. Supp. 3d 311, 332–37 (S.D.N.Y. 2023). Second, the Taliban have failed to make any showing that they are foreign sovereigns. See Beierwaltes v. L'Office Federale De La Culture De La Confederation Suisse, 999 F.3d 808, 816–17 (2d Cir. 2021) (requiring prima facie showing to invoke FSIA protections for foreign sovereigns).

02-cv-0975 (RMU), 2004 WL 2216489, at *2 (D.D.C. Sept. 27, 2004); see Sokolow v. Palestine Liberation Org., 583 F. Supp. 2d 451, 455 (S.D.N.Y. 2008). The Court has thus exercised jurisdiction at the default judgment stage over ATA claims in multiple cases. See, e.g., ECF Nos. 8973 at 9 (Ashton), 10265 at 2 (Burnett).

Second, personal jurisdiction over the Taliban is satisfied. When a defendant chooses not to appear, "it is unclear whether this Court needs to analyze personal jurisdiction" before granting default judgment. See ECF No. 11927 at 4; Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213 & n. 7 (2d Cir. 2010) (holding that courts "*may*" analyze personal jurisdiction but explicitly leaving open the question of whether they "*must*" do so before entering default judgment). The Court has thus found it "need not establish its personal jurisdiction over the Taliban before entering default judgment." ECF No. 8929 at 10; see ECF No. 10265 at 2 (finding that the Court had personal jurisdiction over the Taliban anyway). The same conclusion holds true for the Plaintiffs' ATA claims here.

Even if the Court must reach this issue, however, personal jurisdiction over the Taliban is still available. As with all non-sovereign defendants, the Taliban are subject to the Court's jurisdiction if (1) the Taliban were properly served, (2) there is a statutory basis for jurisdiction, and (3) the exercise of jurisdiction is consistent with due process. See Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp., 40 F.4th 56, 68–69 (2d Cir. 2022) (cleaned up). Here, the Burnett Plaintiffs properly served the Taliban by publication pursuant to the Court's order. ECF Nos. 445, 709; see ECF No. 10265 at 1 (finding service in Burnett was properly effectuated). Next, a state long-arm statute[3] or Federal Rule of Civil Procedure 4(k) provides a

---

[3] The relevant state statute for this member case would be the District of Columbia's long-arm statute, D.C. Code § 13-423. As the Court has explained, the District of Columbia's statute applies instead of New York's long-arm statute because "'the relevant forum for jurisdictional purposes' is the one where the action was 'initiated,' not the one where the consolidated proceedings are held." ECF No. 8911 at 15

statutory basis. See ECF Nos. 8929 at 11, 8911 at 14–16 (discussing interplay between statute

and Rule). And the Plaintiffs' allegations—that the Taliban materially supported Al Qaeda in its

terrorist plans to attack the United States—constitute "'intentional, and allegedly tortious actions

. . . expressly aimed' at residents of the United States," which satisfies the due-process prong. In

re Terrorist Attacks on Sept. 11, 2001, 538 F.3d 71, 95 (2d Cir. 2008) (quoting Calder v. Jones,

465 U.S. 783, 789 (1984)). On these bases, the Court previously found all personal jurisdiction

elements satisfied for ATA claims against the Taliban. See ECF No. 8929 at 10–11, adopted by

ECF No. 8973 at 9 (Ashton).

Accordingly, personal jurisdiction over the Taliban for the Plaintiffs' claims is satisfied,

and jurisdiction poses no barrier to the Court granting default judgment here.

## II.    Liability Under the ATA

### A.    Most Plaintiffs Establish Liability Under the ATA

The Court must inquire into whether there is "a sufficient basis in the pleadings" to

establish the Taliban's liability to these Plaintiffs. Di Marco Constructors, 407 F. Supp. 2d at

445; see ECF Nos. 8929 at 6, 8973 at 4, 11927 at 5. Many prior decisions have found a sufficient

basis for the Taliban's liability under the ATA and, as a result, awarded partial default

judgments. See ECF Nos. 8973 at 9 (Ashton), 9167 at 1 (Burlingame), 9858 at 1 (Ashton-

---

(quoting Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 82 n.4 (2d Cir. 2018)); see In re Agent Orange Prod. Liab. Litig. MDL No. 381, 818 F.2d 145, 163 (2d Cir. 1987). The Burnett case was filed in the District of Columbia, then transferred and consolidated into this MDL under 28 U.S.C. § 1407. See No. 03-cv-09849, ECF No. 9. The Court's statutory basis for jurisdiction thus "depends upon District of Columbia law or Rule 4(k)(2)." ECF No. 8911 at 15. The District of Columbia's long-arm statute contains a tortious-act provision under which the Burnett Plaintiffs' allegations against the Taliban would fall. D.C. Code § 13-423(a)(4). In fact, the Court has reasoned that other plaintiffs' identical allegations against the Taliban satisfy an analogous provision of New York's long-arm statute. See N.Y. CPLR § 302(a)(3) (tortious act without the state causing injury within the state); ECF No. 11870 at 10–11 (finding a *prima facie* case for personal jurisdiction on state tort claims); ECF No. 11927 at 5 n.5 (declining to consider *prima facie* case but relying on pendant personal jurisdiction). Because the long-arm statutes for the District of Columbia and New York contain sufficiently similar provisions, the Court may exercise personal jurisdiction over the Taliban under District of Columbia law.

Dickey), 10468 at 1 (Bauer), 11012 at 1 (Ashton). In particular, MDL plaintiffs have alleged that the Taliban supplied material and logistical support to Al Qaeda and Osama bin Laden. The Court, at the default judgment stage, determined that these allegations established both primary and aiding-and-abetting liability under the ATA. See ECF No. 8929 at 11–13 (Ashton); 18 U.S.C. §§ 2333(a) (primary liability), 2333(d)(2) (aiding-and-abetting liability).

The Court has made the same findings in the Burnett member case. In 2024, based on the allegations in the Burnett pleadings (deemed admitted by the Taliban), the default judgment entered at ECF No. 1756, and the "entire record in the case," the Court found the Taliban liable to over 6,000 plaintiffs. ECF No. 10265 at 1–2, Exs. A–E. These partial default judgments extended to 132 personal injury plaintiffs with prior damages awards against Iran. See id. at 2, Ex. E (listing all personal injury awards). Here, the Plaintiffs bring identical personal injury claims under the ATA. See ECF Nos. 11296 at 2–3, 11300 at 2–3. Consistent with prior decisions, and in light of the Plaintiffs' submissions, the liability analysis is straightforward. See, e.g., ECF No. 10265 at 2. The Court recommends entering default judgment against the Taliban in favor of the Plaintiffs—except for some Plaintiffs described below.

## B.    A Minority of Plaintiffs Fail to Establish Liability Under the ATA

Certain Plaintiffs' submissions lack critical documents and fail to provide "a sufficient basis" to establish the Taliban's liability. Di Marco Constructors, 407 F. Supp. 2d at 445. For the below Plaintiffs, the Court recommends denying their motions without prejudice to refiling.

First, three Plaintiffs do not provide letters from the Victim Compensation Fund ("VCF")[4] that link their personal injuries to the 9/11 Attacks. The ATA provides that "[a]ny

---

[4] Congress created the current Victim Compensation Fund to provide compensation to those injured because of the 9/11 Attacks and has reauthorized it several times. See ECF No. 11400 at 2–3 (providing background on the VCF and the WTCHP). VCF regulations determine whether claimants are eligible for compensation for their injuries. See id. at 3–4. To qualify, a claimant must be examined by the WTCHP

national of the United States injured in his or her person . . . *by reason of* an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States." 18 U.S.C. § 2333(a) (emphasis added). This "by reason of" language requires "some causal connection" between the international terrorism and a plaintiff's injury, meaning that plaintiffs must demonstrate that the act of international terrorism was the "proximate cause" of their injuries. Owens v. BNP Paribas, S.A., 897 F.3d 266, 270, 273 (D.C. Cir. 2018) (citing Owens v. Republic of Sudan, 864 F.3d 751, 794 (D.C. Cir. 2017); Rothstein v. UBS AG, 708 F.3d 82, 91 (2d Cir. 2013)). Proximate cause is a characteristically opaque term for "scope of liability." Restatement (Third) of Torts: Liab. For Physical & Emotional Harm Ch. 6, Special Note on Proximate Cause (Am. Law Inst. 2010).

The Court has not explicitly interpreted the ATA's causation requirement for personal injury claims against the Taliban. See ECF No. 10265 at 3 n.5 (denying without prejudice default motions for initial personal injury damages because "[p]laintiffs have not yet submitted materials that would enable this Court to make the required . . . personal injury determinations"). But the Court's decisions on personal injury claims against Iran are instructive. In applying § 1605A(c) of the FSIA, the Court explained that proximate cause exists where the plaintiffs show that (1) the defendant's actions were a "'substantial factor' in the sequence of events that led to" their injuries, and (2) their injuries were "reasonably foreseeable or anticipated as a natural consequence" of the defendants' conduct. ECF No. 11400 at 11, adopted by ECF No. 11877 at 4.

On the first prong, the Court has typically required VCF letters. Specifically, it has found that plaintiffs' VCF letters are critical "evidence establishing that 9/11 was a substantial factor leading to the [plaintiffs'] medical conditions." ECF No. 8901 at 10–11, adopted by ECF No.

---

or a private physician, obtain a certification that 9/11-related exposures likely caused their injuries, and receive a VCF letter confirming their eligibility for compensation. See id. at 3 n.2, 4.

9274 at 3; see also ECF No. 12084 at 15 ("As the Court has concluded several times, these letters are necessary evidence for the 'substantial factor' prong."), adopted by ECF No. 12094 at 7. VCF letters reflect the agency's determination that a plaintiff suffered "physical harm . . . as a *direct result* of the [9/11] crashes or the rescue and recovery efforts or debris removal." 28 C.F.R. § 104.2(b)(1) (emphasis added). And the Court has consistently held that the VCF and the World Trade Center ("WTC") Health Program "remain the best positioned entities for evaluating medical facts related to the Plaintiffs' conditions." ECF No. 11400 at 14; see ECF No. 8901 at 10 (explaining that the programs "leverage the expertise of medical experts and rigorous research" and employ eligibility determination processes with "robust procedural protections"). The Court has thus sought VCF letters from personal injury plaintiffs in order to connect their injuries to the 9/11 Attacks and, in the process, establish the FSIA's "substantial factor" requirement. See, e.g., ECF Nos. 11400 at 14, 12084 at 15. When plaintiffs have not provided VCF letters, the Court has dismissed their claims without prejudice. See, e.g., ECF No. 12118 at 2 (denying without prejudice a motion for default judgment against Iran in which the plaintiffs failed to include "letters from the Victim Compensation Fund ('VCF') confirming each Plaintiff's eligibility").

Three Plaintiffs—Beverly De Witt, Clarence Singleton, and Vanessa Benjamin—do not provide VCF letters specifying their personal injuries. De Witt avers that she "previously pursued a claim (Claim Number VCF0007731) through the [VCF] specifically related to the physical injuries that [she] suffered while escaping from the 9/11 Attacks, and [that her] claim was determined to be eligible for compensation." ECF No. 11297-5 ¶ 12. But the exhibits attached to her declaration do not include any VCF letter confirming her eligibility for compensation. Id. at 6–36. Singleton has the same issue. He explains that he "previously pursued a claim (VCF Number 0076186) through the [VCF] specifically related to [his] physical injuries

incurred on [9/11], and [his] claims were determined to be eligible for compensation." ECF No. 11297-8 ¶ 13. But his exhibits also do not include any VCF letter. Id. at 6–49. Similarly, Vanessa Benjamin[5] states that she pursued two claims through the VCF (212-000154 and VCF0002848) "specifically related to [her] physical injuries incurred on [9/11]," and that her "claims were determined to be eligible for compensation." ECF No. 11297-2 ¶ 16. Her exhibits include a VCF letter from 2013, but it does not list her personal injuries. Id. at 11–13. Instead, it states only that she was "found eligible for the injuries that were found eligible by the first iteration of the [VCF]." Id. at 11. Of course, De Witt's, Singleton's, and Benjamin's respective declarations provide accounts of their horrific experiences on 9/11, the serious personal injuries they suffered, and detailed medical records on their diagnoses and treatment. See ECF Nos. 11297-2 ¶¶ 13–15, 11297-5 ¶¶ 9–11, 11297-8 ¶¶ 10–12. But none of them attaches a complete VCF letter.

This evidentiary gap prevents Benjamin, De Witt, and Singleton from establishing proximate causation and, as a result, liability under the ATA. Without VCF letters finding these Plaintiffs' conditions eligible for compensation, the Court cannot assure itself that all their injuries occurred as "a direct result of the [9/11] crashes or the rescue and recovery efforts or debris removal." 28 C.F.R. § 104.2(b)(1). Nor can the Court independently evaluate these Plaintiffs' medical records to determine whether the VCF's requirements are met. Such review would duplicate efforts and be administratively unworkable in this litigation. See ECF Nos. 8901 at 10, 11400 at 15. Consistent with prior decisions, then, the Plaintiffs' submissions do not substantiate that the Taliban's actions were a "'substantial factor' in the sequence of events that

---

[5] The amended Burnett pleading adding Vanessa Benjamin to the case lists her as "Vanessa Abreu." No. 02-cv-1616, ECF No. 26 ¶¶ 2527–28 (D.D.C.). But the declaration and VCF letter filed to support her motion list her name as "Vanessa Benjamin." See ECF No. 11297-2 at 1, 11. Based on counsel's representations, the Court concludes that Vanessa Benjamin was properly added to the Burnett member case under a prior name. See ECF No. 11297 ¶ 14 ("To the extent that the name of a Plaintiff has changed since the prior judgment was entered in this MDL, I hereby attest that the parties are the same.").

led to" their personal injuries." ECF No. 11400 at 11. Likewise, these Plaintiffs cannot making a complete showing on both prongs of the "proximate cause" test, and, finally, demonstrate liability under the ATA's "by reason of" language. Owens, 897 F.3d at 270, 273. Luckily, this hole in the evidentiary record can be easily remedied. The Court therefore recommends denying the default judgment requests of Benjamin, De Witt, and Singleton without prejudice to their refiling with complete VCF letters.

Second, three Plaintiffs cannot establish that they were properly added to the Burnett case. Eric Berntsen, Lisa Gong, and Clarence Singleton all do not have prior damages awards and ask for initial partial default judgments on their personal injuries. See ECF No. 11297 ¶¶ 19, 22, 24; ECF No. 11298-2 at 1. Each Plaintiff filed a personal declaration attaching exhibits listing their injuries and, in Berntsen's and Gong's cases, a VCF letter confirming their eligibility for compensation. See ECF Nos. 11297-3 at 11 (Berntsen), 11297-6 at 11 (Gong). (As explained above, Singleton does not provide a complete VCF letter.) Counsel asserts that these three Plaintiffs were added to the Burnett member case and this MDL post-transfer through "HAND FILED" submissions. See ECF No. 11298-2 at 1 (listed under "Complaint" with plaintiff identifiers P4999, P5068, P5268). The relevant pleadings or notices of amendments are not electronically filed on the docket. And these Plaintiffs are not listed in any of the other complaints, notices, or orders that the Plaintiffs reference. See ECF Nos. 11298-2, 11302-2.

Based on the Court's own review, a separate Burnett complaint *does* list these Plaintiffs. See Burnett, No. 03-cv-9849, ECF No. 741 at 290, 302, 326. But this complaint does not include the Taliban as defendants and, in fact, includes only claims against the Kingdom of Saudi Arabia. See id. at 334, 411–32. Moreover, this complaint states that it supplements the operative Burnett complaints, but it "relates solely to Plaintiffs' claims against the Kingdom of Saudi

Arabia, and *does not apply to any other defendants* in the [9/11] MDL." Id. at 340 (emphasis

added). This pleading thus cannot establish the Plaintiffs' claims against the Taliban.

As a result, the Court cannot verify that these Plaintiffs were properly added to this case

with ATA claims against the Taliban. The Court thus cannot apply its prior orders on the

Taliban's default and liability to these Plaintiffs' default judgment motions. See, e.g., ECF Nos.

1756, 10265. Accordingly, the Court recommends denying the motions of these Plaintiffs (Eric

Berntsen, Lisa Gong, and Clarence Singleton) without prejudice to their refiling with proof that

their ATA claims against the Taliban were properly pleaded.

III.    **The Appropriate Damages Framework and Individual Assessments**

All that remains is assessing damages. The Court has developed a damages framework

for personal injury claims under the FSIA. This framework governs the Plaintiffs' ATA claims

as well. The Court adopts its prior individual analyses supporting damages assessments for those

Plaintiffs with prior awards. The Court then proceeds to individual applications for the Plaintiffs

without prior damages awards.

A.    **Assessing Damages for Personal Injuries Under the ATA**

The ATA allows plaintiffs to recover "threefold the damages he or she sustains and the

cost of the suit, including attorney's fees." 18 U.S.C. § 2333(a). "Congress intended that the full

range of damages should be available" to U.S. nationals bringing claims under this provision.

Estate of Ungar ex rel. Strachman v. Palestinian Auth., 304 F. Supp. 2d 232, 254 (D.R.I. 2004).

The Court has thus awarded damages for pain and suffering, economic loss, and loss of solatium

pursuant to § 2333(a). See ECF 8929 at 13 (collecting examples). Specifically, for personal

injury claims, the Court awarded plaintiffs the same damages against the Taliban as they

previously received against Iran for analogous claims. Instead of "re-evaluat[ing] the evidence

supporting" the damages determinations against Iran, the Court "adopt[ed] and applie[d] to the

Taliban each prior determination of . . . pain and suffering damages for people injured." ECF No. 8929 at 13, adopted by ECF No. 8973 at 9–10; see ECF No. 10265 at 2 (taking same approach for ATA personal injury claims in Burnett). These prior decisions confirm that the Court's damages framework for personal injury claims, while developed under § 1605 of the FSIA, applies equally to the Plaintiffs' personal injury claims against the Taliban under the ATA.

The Court established and elaborated its damages framework for personal injury claims through multiple cases under the FSIA. Because § 1605A creates a private cause of action "for personal injury or death" and permits the recovery of "money damages" that may include "pain and suffering . . . damages," 28 U.S.C. § 1605A(c), the Court devised a framework for fairly assessing pain and suffering damages for all personal injury claims. This framework divides injuries into three categories with corresponding damages: a baseline award ($7,000,000) for "severe" injuries, a downward departure ($5,000,000) for "significant" injuries, and an upward departure ($10,000,000) for "devastating" injuries. See ECF No. 5879 ("Burnett I") at 6–10, adopted by ECF No. 5946 at 3. The Court has applied this framework in individually assessing personal injury claims for plaintiffs that suffered physical injuries, fatal latent conditions, and non-fatal latent conditions. See, e.g., Burnett I at 10–26; ECF Nos. 8901 at 8–9, 11400 at 20–21. Through this process, 17 of the Plaintiffs received prior damages awards against Iran. See ECF No. 11302-2 at 1 (listing citations to "Prior Award[s]").

Here, the Plaintiffs all ask for pain and suffering damages for their physical injuries and latent conditions. They fall into two groups. First, some Plaintiffs previously received damages awards against Iran and request the same pain and suffering damages from the Taliban. See ECF Nos. 11299, 11302-2. Consistent with past practice, the Court recommends adopting the analysis underlying these Plaintiffs' prior awards and awarding them their requested damages. Second,

14

the Court recommends granting default judgments to two Plaintiffs—Louie Cacchioli and

Llewellyn Malcom—who "do not have prior judgments for pain and suffering damages (or other

damages) entered in this MDL against the Iran Defendants." ECF No. 11297 ¶ 15. The Court

thus must make initial personal injury determinations under the ATA for these Plaintiffs.

**B.      The Plaintiffs With Prior Awards Against Iran (ECF No. 11299)**

Seventeen Plaintiffs received prior awards of pain and suffering damages against Iran.

See ECF Nos. 5946 at 7 (Barbieri), 10780 at 11 (Beloten), 10988 at 4 (Gonzalez). In its orders

awarding these Plaintiffs damages against Iran, the Court adopted individual analyses for each

Plaintiff in the corresponding Report & Recommendation, which evaluated the Plaintiffs'

proffered evidence and determined the damages appropriate for their documented injuries. See,

e.g., ECF Nos. 5879 at 11, 21, 10727 at 14–25, 10858 at 6. None of these Plaintiffs assert that

their documented injuries have changed. The Court adopts these previous analyses as sufficient

support for the Plaintiffs' requests for damages from the Taliban. See, e.g., ECF No. 10265 at 2,

Ex. E (taking same approach). Additionally, the Court has consistently awarded treble damages

on ATA claims against the Taliban—including in this member case on plaintiffs' personal injury

claims. See ECF Nos. 10265 (Burnett), 8973 (Ashton), 8929 (Ashton), 9167 (Burlingame), 9858

(Ashton-Dickey), 10468 (Bauer), 11012 (Ashton). These Plaintiffs are similarly entitled to treble

damages. The Court thus recommends awarding these Plaintiffs pain and suffering damages as

proposed in ECF No. 11302-2.

**C.      The Plaintiffs Without Prior Awards (ECF No. 11295)**

Seven Plaintiffs do not have prior personal injury awards in this litigation. After

recommending the denial without prejudice of five Plaintiffs' claims, two Plaintiffs remain. In

support of their motions for default judgment, these Plaintiffs submitted sworn declarations, VCF

letters, citizenship records, and detailed medical records. See Burnett I at 9 (listing critical

15

documentation). The Court individually analyzes the claims of these two Plaintiffs and categorizes them within its established damages framework.

### 1. Louie Cacchioli

On 9/11, Louie Cacchioli was a firefighter with the New York City Fire Department ("FDNY"), Ladder 47. ECF No. 11297-4 ¶ 3. After arriving at the fire station for his morning shift, Cacchioli heard the news that a passenger jet had crashed into the North Tower of the WTC. Id. ¶ 4. He then saw United Airlines Flight 175 hit the WTC's South Tower. Id. His team immediately sprang into action and were instructed to head to the Marriot Hotel near the WTC. Id. ¶¶ 4–5. When Cacchioli arrived, the hotel was on fire from debris falling from the Towers, and he "saw people jumping [from the Towers] and falling almost right on top of [him]." Id. ¶ 5. One of the "jumpers landed on [his] fellow firefighter, Danny Sur, killing him instantly." Id. As other bodies struck the ground, they "made a horrible sound." Id. Still, Cacchioli and his team entered the hotel and escorted people outside and to safety. Id. ¶ 6.

Cacchioli then received instructions to approach the North Tower. As he entered the lobby with his team, he encountered a "war zone": the elevators doors had been "completely blown out" and "people were running and screaming and being struck by falling debris." Id. ¶ 7. Cacchioli and other firefighters then took an operational elevator to the 24th floor. As the doors to that floor opened, Cacchioli briefly saw "a cloud of dust, debris, and smoke." Id. ¶ 8. He and another firefighter doubled back for more tools. But as they took the elevator down, Cacchioli "heard a huge explosion that sounded like a bomb"; the elevator stalled and its lights went out. Id. Cacchioli and his partner were able to pry open the doors and exit onto another floor.

As explosions continued, Cacchioli rushed to exit this floor. He crawled, with a flashlight in hand, to eventually find an exit staircase. Id. ¶¶ 9–10. Once inside, he began directing "a group of about 30 to 40 people" downstairs. After several explosions, Cacchioli heard "'bang,

16

bang, bang' and surmised that it was floors collapsing on top of one another." Id. ¶ 11. Even while carrying one man on his back down 12 flights of stairs, Cacchioli directed his group to the lobby of the North Tower. Id. ¶¶ 11–12. Part of his group exited to the left, and Cacchioli continued to the right with others. While "[t]he people that headed to the left didn't make it out," Cacchioli and his group "came out alive on West Street." Id. ¶ 12.

Once outside, Cacchioli began hearing "more loud noises . . . like bombs going off," and when he looked back, he saw the North Tower's antenna falling. Id. ¶ 13. He began running to "stay ahead of the huge black smoke ball" coming after him. Id. As he ran, he removed his air mask "to make himself lighter" and run faster. Id. He threw himself to the ground at one point because "the heavy sawdust-like air mixing with glass . . . was choking [him] and taking away [his] vision. Id. At another point, he fell by a fire truck, where he found and put on a compressed air breathing mask. Id. ¶ 14. He passed out and awoke to another firefighter pulling him to safety. Id. Cacchioli continued searching for his friends "until [he] couldn't walk anymore." Id.

Following the Attacks, Cacchioli sought and continues to receive monthly medical attention for his injuries. He reports suffering from multiple physical injuries—including corneal and retinal damage, pulmonary injuries (e.g., chronic obstructive pulmonary disease), lung disease, asthma, a strained back, and damages to his teeth and jaw—and provides medical records detailing each injury and his treatment. Id. ¶ 15; id. at 12, 14, 17, 21, 22, 24. Cacchioli was also diagnosed with post-traumatic stress disorder ("PTSD") due to his experiences during the Attacks. Id. ¶ 15; id. at 10, 17, 23–25. The VCF found Cacchioli eligible for compensation for only his corneal and retinal damage and a "pulmonary injury." Id. at 10. These are "significant" injuries, however, because they are analogous to "nasal irritations, chest pain, and asthma from inhalation of smoke, soot and dust" and "cuts/lacerations/bruises." Burnett I at 6–7.

17

The Court thus recommends an award of $5 million in pain and suffering damages. Id. at 6. In accordance with § 2333(a), the Court also recommends awarding Cacchioli treble damages.

### 2. Llewellyn Malcolm

As of 9/11, Llewellyn Malcom had been a bell attendant at the New York Marriott World Trade Center Hotel for over 20 years. ECF No. 11297-7 ¶ 4. That morning, Malcolm was working in the lobby of the hotel attending to guests. Id. ¶ 5; see id. at 9 (confirming employment and presence). When American Airlines Flight 11 crashed into the North Tower, Malcolm "heard a tremendous explosion directly overhead." Id. ¶ 5. Fearing that other staff members had not heard the explosion, he immediately ran around the lower and subterraneous floors of the hotel to alert staff that they needed to evacuate. Id. Malcolm then attempted to flee the hotel. But as he ran from the building, he "tripped and stumbled and people fleeing from the building trampled over me," with some even falling on top of him. Id. ¶ 6. In the process, he injured his left knee and ankle. Id.

Malcolm still pressed onward. After resting on the hotel steps "for a few minutes," he "stumbled out of the courtyard area of the hotel." Id. ¶ 7. He saw "people jumping from the WTC Towers and exploding on the concrete in front of [him]," leaving "body parts strewn around the courtyard." Id. He reached an area where police were standing when the South Tower collapsed. A plume of dust, debris, soot, and ash—which "looked like a river coming towards [him]"—covered Malcolm's body, and he inhaled "large quantities of these toxic substances." Id. ¶ 8. He eventually made his way to a Metropolitan Transportation Authority bus, which ferried him to 125th Street and St. Nicholas Avenue. From there, he took public transportation to his home in the Bronx, where he arrived "later that evening." Id. ¶ 9.

Shortly after the Attacks, Malcolm sought treatment for multiple injuries. He reports his left knee injury (which later required arthroscopic knee surgery), a left ankle injury, and a lower

back injury. Id. ¶ 11; id. at 17–18, 19–20, 25–26, 33–38, 37, 53–54. He also suffers from several latent conditions: reactive airway disease syndrome, gastroesophageal reflux disease, and asthma. Id. ¶ 11; id. at 29–30, 55–56, 60–61. And he was diagnosed with PTSD and depression, both of which have required "continuous treatment." Id. ¶ 12; id. at 17, 45. The VCF determined that Malcolm was eligible for compensation for his "leg injury," "back injury," and "pulmonary injuries." Id. at 13. This VCF-certified combination of physical injuries and latent conditions are "significant," and the Court recommends awarding Malcolm $5 million in pain and suffering damages. Burnett I at 6–7. In accordance with § 2333(a), the Court also recommends awarding Malcolm treble damages.

## CONCLUSION

The Court recommends GRANTING the Plaintiffs' motion for partial default judgments at ECF No. 11299 and GRANTING IN PART the Plaintiffs' motion for partial default judgments at ECF No. 11295. Specifically, the Court should (1) grant the Plaintiffs with prior awards against Iran treble pain and suffering damages as provided in ECF No. 11302-2; and (2) grant two Plaintiffs without prior awards against Iran, see ECF No. 11298-2, treble pain and suffering damages, as follows:

| Plaintiff | Motion | Pain and Suffering Damages |
|---|---|---|
| Louie Cacchioli | ECF No. 11295 | $15 million |
| Llewellyn Malcolm | ECF No. 11295 | $15 million |

The Court also recommends awarding the above Plaintiffs prejudgment interest assessed at 4.96 percent per annum, compounded annually for the period from September 11, 2001, until the date of judgment. These Plaintiffs should be permitted to seek punitive, economic, and other damages at a later date, to the extent such damages were not sought in this motion.

Finally, the Court recommends DENYING the motions for partial default judgments by Vanessa Benjamin, Eric Berntsen, Beverly De Witt, Lisa Gong, and Clarence Singleton, see ECF No. 11298-2, without prejudice to these Plaintiffs refiling with complete documentation.

SARAH NETBURN
United States Magistrate Judge

DATED:      August 5, 2026
            New York, New York

\*          \*          \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have 14 days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); see Fed. R. Civ. P. 6(a), 6(d). These objections shall be filed with the Court and served on any opposing parties. See Fed. R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable George B. Daniels if required by that judge's Individual Rules and Practices. Any requests for an extension of time for filing objections must be addressed to Judge Daniels. See Fed. R. Civ. P. 6(b). The failure to file timely objections will waive those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. James, 712 F.3d 79, 105 (2d Cir. 2013).